RAFAEL G. DEL CASTILLO                6909-0
RAFAEL DEL CASTILLO & ASSOCIATES
Attorneys at Law, A Limited Liability Law Company
289 Kawaihae Street No. 222
Honolulu, Hawai`i 96825
Telephone:  (808) 782-1262; Toll-Free Fax: (866) 528-8371

ADDISON D. BONNER               9163-0
TREVOR N. TAMASHIRO            9584-0
TAMASHIRO SOGI & BONNER, A LAW CORPORATION
705 S. King Street, Suite 105
Honolulu, Hawai`i 96813
Telephone: (808) 492-1907; Facsimile No.: (808) 356-1581


Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT CIRCUIT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PARK, SOOK JA; PARK, SOON Y.; PARK, GRACE; and KIM, JAE SOOK on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII MEDICAL SERVICE ASSOCIATION,<br><br>DEFENDANT. | Case No. 1:21-cv-00039 JMS-WRP (CONTRACT)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, PROHIBITIVE AND MANDATORY; JURY DEMAND**<br><br>[CLASS ACTION] |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, PROHIBITIVE AND MANDATORY**

    1.    Plaintiffs and Class A Representatives PARK, SOOK JA

("Class A Plaintiff PARK, Sook Ja"), PARK, SOON Y. ("Class A Plaintiff PARK, Soon"), PARK, GRACE ("Class B Plaintiff PARK, Grace"), and KIM, JAE SOOK ("Class B Plaintiff KIM, Jae Sook")  (collectively, "Class Representatives") on behalf of themselves and all other similarly situated ( "Class A" and "Class B" as defined below) by and through their attorneys, Rafael del Castillo & Associates and Tamashiro Sogi & Bonner, complain against Hawaii Medical Service Association ("HMSA") for declaratory and further relief alleging HMSA in bad faith denied the medically necessary Long-Term Services and Supports ("LTSS") and the beneficiary support services for LTSS.

2.     This is a class action brought pursuant to Rule 23, Haw. R. Civ. P., by Class Representatives on behalf of all elderly enrollees in the PLAN whose first, and in many cases only, language is Korean (collectively, "Class Members") on behalf of two (2) subclasses, Class "A" and Class "B," arising from erroneous denials of medically necessary covered LTSS benefits as alleged herein. This civil action is also brought pursuant to 42 U.S.C. §1983 to vindicate rights secured by the federal Medicaid statutes and the Fourteenth Amendment to the United States Constitution.

3.     Class counsel bring adequate resources and extensive experience litigating the use and application of Hawaii's statutory medical necessity criteria and on behalf of plaintiffs in insurance bad faith claims.

a.  Attorney del Castillo has practiced law in Hawaii since October 1997, and has for the past 19 years successfully litigated or settled dozens of cases against health insurers involving the application of H.R.S. § 432E-1.4, Hawaii's statutory medical necessity statute, to health insurance coverage for severely ill, aged, and disabled persons, including as co-lead counsel in the action *G. v. State*, 794 F.Supp.2d 1119 (D. Haw. 2011), and a number of such cases also gave rise to successful bad faith claims against health insurers;

b.  Attorney Bonner has practiced law in Hawaii since November 2009, and his litigation practice has included the successful representation of dozens of insureds in disputes involving insurance coverage issues. Attorney Bonner has also represented dozens of individuals and corporations in actions involving assertion of rights under the Americans with Disabilities Act and federal and state discrimination laws.  He currently represents several hundred plaintiffs in a putative class action involving alleged torts committed by state actors, and a defendant in a putative class action alleging Title IX violations.

4.      The allegations herein are based upon investigations Class Representatives' counsel conducted including interviews of potential Class Members, analysis of files HMSA provided to Class Members pursuant to 45

3

C.F.R. §§ 164.502 and 164.524, and by preparing and advocating appeals of adverse benefit determinations HMSA issued to individual Class A Members.

5.      The benefits HMSA denied were covered by the Hawaii State Plan for Medicaid, QUEST Integration, which is administered by the Hawaii State Department of Human Services ("DHS").

6.      DHS contracts with Medicaid Managed Care Organizations ("MMCO") such as HMSA, ALOHACARE, UnitedHealthcare and Wellcare Health Insurance of Arizona to arrange or provide medically necessary services, including LTSS and certain home and community-based services ("HCBS") to avoid the need for institutionalization and the physical and emotional risks associated with long term institutionalization.

7.      The Hawaii State Plan and the DHS contracts mandate that the MMCOs have and follow a robust "cultural competency" policy to "effectively address cultural and language barriers to the delivery of appropriate and necessary health services."

8.      HMSA contracted with DHS to arrange or provide benefits covered under its contract with DHS under its HMSA QUEST Integration Plan ("PLAN").

9.      On information and belief, DHS assigns each beneficiary to an MMCO and the beneficiary is permitted to change from one MMCO to another.

4

10.     All Class Members have in common, as alleged herein, the fact that they are all at risk of institutionalization and injury because they

- Are all elders living alone on very limited means;

- All have challenging language issues, oral and written, which HMSA has failed to address and which have caused the elders confusion and deprivation of basic rights;

- Are all unable to care for themselves with sufficient independence to live safely every day in the community without assistance; and

- All have no caregiver devoted to ensuring on a daily basis that their safety and all of their activities of daily living are adequately and safely performed.

11.     If Class Representatives' claims on behalf of Class Members do not proceed with Class Counsel, it is unlikely that their claims will proceed at all, or that Class Representatives will succeed in recruiting similarly experienced class counsel.

12.     The Class claims all arise from HMSA's failure to properly apply or to reach the correct lawful result of applying the medical necessity criteria which are mandated by Hawaii law to govern covered LTSS benefits determinations for Class Members.

US_Active\119646836\V-1

13.    HMSA continues to deny Class A Representatives and Class A Members medically necessary covered LTSS benefits which form the basis of their claims and request for injunctive relief to instate and re-instate coverage of LTSS benefits.

14.    HMSA denied Class B Representatives and Class B Members medically necessary covered LTSS benefits as a result of which Class B Members suffered more than one month, and in most cases several months, deprived of medically necessary LTSS benefits; and in some cases ultimately suffered the loss of valuable established relationships with Korean-speaking providers, together with the concomitant loss of continuity of care, a valuable health asset, when they were compelled to disenroll from HMSA in order to be covered for medically necessary LTSS services.

15.    Class A Representatives and Class A Members also have in common the fact that disenrolling in HMSA would deprive them of the relationships they have with their (comparatively rare) Korean-speaking providers who participate only with HMSA, and HMSA is able to hold Class Members hostage for that reason.

16.    Class Representatives have endured deprivations, insults, and damages substantially similar to those endured by all Class Members, and Class Representatives have committed to vigorously pursue those claims on behalf of all

6

Class Members.  Class Representatives will therefore fairly and adequately represent the interests of the Class A Members and Class B Members.

17.    As further alleged herein and typical of every Class Representative's and Class Member's claims, HMSA was contractually obligated to effectively address cultural and language barriers to ensure the delivery of appropriate and necessary health services to each Class Representative and each Class Member.

18.    Plaintiffs' counsel investigated alleged Korean *hanja honyong* script translations of HMSA PLAN contractual documents and written notices of adverse benefit determinations (*hanja honyong* is a mixed script, consisting of *hangul*, the Korean alphabet, and *hanja*, Chinese characters).

19.    HMSA's translations violated the cultural competency terms of its contract with DHS because its translations fail to provide Class Representatives and Class Members proper notice of their Medicaid rights and benefits.

20.    HMSA had a duty to deal fairly and in good faith with each Class Representative and Class Member in providing them complete, culturally appropriate information about their benefits and rights in understandable terms and language, fully complying with the PLAN, complying with Hawaii's medical necessity law, H.R.S. § 432E-1.4, and properly and correctly handling claims for

7

benefits and services that were or are medically necessary for Class

Representatives and Class Members.

21.    Instead of providing culturally competent and linguistically

appropriate assistance with "navigating the grievance and appeal process within

the HMSA . . . [and] appealing adverse benefit determinations by HMSA. . ." or

referring Class Plaintiff PARK, Soon, and other Class Members to sources of legal

representation, HMSA tortuously interfered with Class Representatives and Class

Members respective attorney-client relationships with Class Counsel and blocked

information Class Members authorized Class Counsel to access.

<u>INTRODUCTION</u>

22.    All Class Members are among the aged, blind, and disabled low

income population making them eligible for Medicaid.

23.    Class Members live alone without caregivers advocating for

and assisting them to access their PLAN benefits or live with elderly partners who

are unable to assist or care for them.

24.    The Hawaii State Plan for Medicaid is required by Federal law

to ensure that aged, blind, and disabled Medicaid beneficiaries are able to live in

the least restrictive setting possible.

25.    At all relevant times herein, Class Members have been at risk for the most restrictive setting, institutionalization, because they are aged and have afflictions that limit their abilities to care for themselves fully without assistance.

26.    At all relevant times herein the State of Hawaii Department of Human Services' ("DHS") contract with HMSA at section 40.900 required HMSA to provide all Class Members with service coordination, assessment, and service plans because they require long term services and supports ("LTSS") or have special health care needs ("SHCN").

27.    Pursuant to the PLAN HMSA was required to provide service coordination that is a patient-centered, holistic approach to coordinating Class Members' benefits across all providers and settings.

28.    At all relevant times herein the DHS contract with HMSA at section 40.210 of the PLAN requires HMSA to ensure that all medically necessary covered services are accessible and available to Class Members.

29.    The DHS contract with HMSA at sections 30.200 and 40.700 expressly incorporates H.R.S. 432E-1.4, the Hawaii statute defining "medical necessity."

30.    At all relevant times herein the DHS contract with HMSA at section 40.700 required HMSA to provide all medically necessary services for Class Members all HMSA Medicaid enrollees.

9

31.     At all relevant times herein the DHS contract with HMSA at section 40.730 required HMSA to cover medically necessary LTSS Home and Community Based Services ("HCBS") benefits for Class Members including:

a.  Medically necessary "Personal assistance services" in the home,

b.  Medically necessary Adult day care, and

c.  Any other medically necessary LTSS HCBS services.

32.     HMSA has published binding descriptions of the personal assistance and Adult day care benefits at

https://hmsa.com/portal/provider/zav_QI.02.LON.20.htm along with all of the additional LTSS benefits HMSA is required to provide to Medicaid beneficiaries.

33.     The PLAN requires HMSA to provide up to ten (10) hours weekly of personal assistance ("Level 1") with the "instrumental activities of daily living" ("IADLs") such as shopping and meal preparation, cleaning and home maintenance, managing medications, managing finances, and managing transportation.

34.     The PLAN requires HMSA to provide as many hours as necessary of personal assistance ("Level 2") with the "activities of daily living" ("ADLs" ) such as bathing, dressing and grooming, feeding, walking, and other activities of normal home-based living.

10

35.     Class Members who have difficulties or the inability to perform the IADLs or ADLs are known to be able to avoid or delay institutionalization with supportive personal assistance services provided in their homes.

36.     The PLAN requires HMSA to provide medically necessary Adult day care which includes observation and supervision by center staff, coordination of behavioral, medical and social plans, and implementation of the instructions in the member's service plan as well as therapeutic social, educational, recreational, and other activities that stimulate and counteract mental, emotional, and physical decline.

37.     Class Members who are experiencing mental, emotional, or physical decline are known to avoid or delay institutionalization with supportive Adult day care services.

38.     At all relevant times herein appropriate culturally competent providers of the adult day care and personal assistance services were available and accessible by all Class Members.

39.     Hawaii law required HMSA, pursuant to H.R.S. §§ 431:26-102-102, to contract with adult day care and personal assistance providers able to provide culturally competent services to Class Representatives and Class Members.

11

40.     HMSA denied Class Representatives and Class Members
service coordination, assessment, and service plans that complied with the letter
and spirit of the PLAN requirements to provide medically necessary and culturally
competent LTSS services.

41.     HMSA instead used service coordinators as gatekeepers
blocking access to medically necessary LTSS HCBS covered services using Class
Representatives' and Class Members' culture and limited English facilities against
them by denying Class Representatives and Class Members access to
understandable disclosures of their rights and appropriate due process.

42.     HMSA denied LTSS HCBS coverage for Class Representative
and Class Members for the services provided in adult day care ncluding regular
supportive care, daily observation and supervision, coordination of behavioral,
medical and social plans, therapeutic, social, educational, recreational, and other
activities such as mood support, cognitive support activities, and implementation
of the relevant instructions in each Class Members' individual service plan.

43.     HMSA failed to provide Class Representatives and Class
Members with functioning access points for complaints and concerns about HMSA
and its benefit decisions truly accessible to and appropriate for Class
Representatives and Class Members.

44.    HMSA failed to provide Class Representatives and Class Members effective and understandable education on HMSA grievance and appeal rights.

45.    HMSA failed to provide Class Representatives and Class Members meaningful, understandable, and adequate assistance navigating HMSA's grievance and appeal process to appeal HMSA's "adverse benefit determinations" including, but not limited to, Class Representatives' and Class Members' rights to coverage of medically necessary LTSS Home and Community Based Services ("HCBS").

46.    In the case of most Class Representatives and Class Members, HMSA had previously covered some medically necessary HCBS because HMSA had determined in 2018 that the Class Representatives and Class Members were each at risk of being institutionalized, making the HCBS services medically necessary.

47.    HMSA thereafter "re-evaluated" Class Representatives and Class Members and HMSA denied and ceased covering those same benefits in 2019 and 2020 without proof that the Class Representatives' or Class Members' medical conditions had materially improved to the point they were no longer at risk of institutionalization and injury.

13

48.    In each of the re-evaluations, HMSA overthrew HMSA's own prior conclusion that the Class Representative or Class Member was at risk of institutionalization and injury.

49.    HMSA's adverse benefit determinations and denials left Class Representatives and Class Members without meaningful recourse because HMSA provided materially erroneous and confusing translations of PLAN benefits and beneficiary rights to appeal adverse decisions.

50.    HMSA's denials of medically necessary services LTSS and Beneficiary support services:

a.  Breached the duty to act in good faith that is inherent in the relationship between the insurer and the insured,

b.  Violated the Medicaid Act by withholding and denying coverage for medically necessary services without providing fair and actual notice of, *inter alia*, the right to challenge adverse benefit determinations, and

c.  Violated the PLAN which was intended to benefit Class Representatives and Class Members.

51.    Class B includes Representatives and Members who have been enrolled with HMSA and also enrolled with ALOHACARE, and investigation has determined that the determinations HMSA made concerning the amount and type of LTSS services that are medically necessary for Class Representatives and Class Members are routinely less than HMSA previously determined were medically

14

necessary for such Class Representatives and Class Members, and were also routinely less than the amount and type of LTSS services ALOHACARE determined to be medically necessary.

52.    Class B Representatives and Class Members were able to disenroll with HMSA and enroll with Medicaid Managed Care Organization ALOHACARE because, unlike Class A Representatives and Class A Members, they found primary care providers who participate with ALOHACARE.

53.    Class Members choices of primary care providers are significantly limited because very few primary care providers in Honolulu speak Korean and are available to Medicaid beneficiaries.

54.    Class A Representatives and Class A Members who could not find a primary care provider participating with ALOHACARE were not able to disenroll from HMSA and enroll in ALOHACARE, and thus remain hostages to HMSA's PLAN because their primary care providers do not participate with ALOHACARE.

55.    When Class counsel attempted to assist Class A Representatives and Class A Members to appeal denials of LTSS services by HMSA, HMSA has repeatedly and intentionally violated 45 C.F.R. §§ 164.502 and 164.524 by refusing to produce within thirty (30) days of receiving a request all documents on which they based adverse benefit determinations.

56.    HMSA's refusal to produce the requested documents prolonged the denials of medically necessary LTSS for Class A Representatives and Class A Members and unlawfully interfered with due process rights to appeal benefit denials.

57.    Federal regulations guarantee Class Representatives and Class Members the right to understandable information about the PLAN benefits, disclosures, grievance, and appeal rights, and understandable instructions for accessing assistance to understand PLAN benefit- and appeal processes.  42 C.F.R. §§ 438.71, 438.404.

58.    HMSA withheld, misrepresented, and obfuscated essential PLAN and appeal information required pursuant to 42 C.F.R. §§ 431.206, 431.210, 431.242, 438.10, 438.71, 438.404.

59.    HMSA violated the requirement of 42 C.F.R. § 431.221 to provide meaningful and adequate assistance to Class Representatives and Class Members in submitting appeals of adverse benefit determinations and interfered maliciously and unlawfully with Class Representatives and Class Members' attempts to secure assistance on their own.

60.    HMSA tortiously interfered with the attorney-client relationship between Class Counsel and certain Class Members, including Class Representative PARK, Soon, in violation of 42 C.F.R. § 438.71 and common law.

US_Active\119646836\V-1

## JURISDICTION AND VENUE

61.     The Circuit Court of the First Circuit, State of Hawai`i, has

subject matter jurisdiction of this matter pursuant to H.R.S. §§ 603-21.5 and 632-3

to resolve Class Members' claims against HMSA as set forth herein.

62.     There is currently an actual controversy between all Class

Members and HMSA which is ripe for adjudication on the claims and issues

alleged herein.

63.     This Court has personal jurisdiction over HMSA as the primary

HMSA has offices in and do business in the First Circuit.

64.     Class Representatives' and Class Members' injuries

complained of took place in the First Circuit.

65.     Venue is proper in the First Circuit under H.R.S. § 603-36(5) as

Class Representatives' and Class Members' claims for relief arose in the First

Circuit, the PLAN was administered in the First Circuit, and the primary HMSA

has continuously done business in the First Circuit.

66.     Class Representatives' Complaint meets the requirements of

Haw. R. Civ. P. Rule 23(a), numerosity, common questions, typicality, and Class

Representatives will fairly and adequately represent the interests of all Class

Members in their claims for declaratory and further relief.

## PARTIES

## PLAINTIFFS

### *Class A Representative PARK, Soon Y.*

67.   At all relevant times herein, Class A Representative PARK, Soon Y. was a resident of the First Circuit, was duly enrolled in the PLAN, and was eligible for all benefits covered by the PLAN.

68.   Class A Representative PARK, Soon Y., in common with all other persons similarly situated, is at risk of institutionalization and injury because she is an elder living alone on very limited means, is unable to care for herself with sufficient independence to live safely in the community, and has no caregiver devoted to ensuring her safety and that all of her activities of daily living are adequately and safely performed day-after-day.

69.   As is the case with the majority of other Class Members, Class A Representative PARK, Soon Y. received her elementary and middle school education, such as it was, in Korea just after World War II ended and continuing into the Korean Conflict in an environment when Korean replaced Japanese as the primary language taught in schools.

70.   Just after World War II ended and continuing into the Korean Conflict, the demand for labor competed with Korean elementary and middle school education.

18

71.    Based upon an objective, unconflicted evaluation, a combination of personal assistance and adult day care services is medically necessary for Class A Representative PARK, Soon Y. to remain safe in the community.

72.    The combination of personal assistance and adult day care services that are medically necessary for Class A Representative PARK, Soon Y. is the most cost effective alternative for her to remain safely in the community as long as possible.

73.    Class A Representative PARK, Soon Y. repeatedly requested that HMSA provide coverage for LTSS HCBS personal assistance because she has for many months been unable to perform all IADLs and all ADLs.

74.    Class A Representative PARK, Soon Y. refrained from requesting LTSS HCBS Adult day care services because she was convinced that requesting any other LTSS HCBS services would adversely affect the chance that HMSA would approve coverage of personal assistance.

75.    Class A Representative PARK, Soon Y. switched her enrollment to HMSA as she was entitled to do.

76.    On or around February 12, 2020, HMSA evaluated Class A Representative PARK, Soon Y. for LTSS.

77.     For unknown reasons, HMSA's processing of the evaluation is
not completed for eight weeks, during which time PARK, Soon Y., and any other
beneficiary of LTSS, waited without services which are medically necessary.

78.     In May 2020, HMSA correctly determined that Class A
Representative PARK, Soon Y. was at high risk for institutionalization.

79.     Based upon HMSA's correct determination that Class A
Representative PARK, Soon Y. was at high risk for institutionalization, personal
assistance services are medically necessary for her to remain safely in the
community for as long as possible. On information and belief, HMSA approved 16
hours per week of personal assistance for Class A Representative PARK, Soon Y.
from May 18, 2020 to May 1, 2021.

80.     HMSA has failed to issue a determination on whether adult day
care services are medically necessary for Class A Representative PARK, Soon Y.

81.     HMSA failed to provide Class A Representative PARK, Soon
Y. with notice of her rights, written disclosure of coverages and benefits, including
information on coverage principles and any exclusions or restrictions on coverage.
H.R.S. § 432:1-101.5 and 42 C.F.R. §§ 438.10, 438.404.

82.     Class A Representative PARK, Soon Y. admits she suffers from
cognitive and intermittent memory impairments for which she blames the
difficulties and efforts her physical medical conditions present.

20

83.    Class A Representative PARK, Soon Y. admits that she has been struggling with physical medical issues and was unable to fully attend information she received concerning her right to prompt notice of HMSA's decision concerning coverage of personal assistance and adult day care services.

84.    Class A Representative PARK, Soon Y. admits that she has some understanding of spoken English from time-to-time.

85.    Class A Representative PARK, Soon Y. alleges that on numerous occasions she has heard the Korean interpreter HMSA provides erroneously translate statements Class A Representative PARK, Soon Y. has heard HMSA's Service Coordinator make and she has called attention to the errors.

86.    Class A Representative PARK, Soon Y. alleges that she has not received adequate assurances from HMSA that statements and information HMSA's Service Coordinators have provided to her were all correctly interpreted.

87.    Class A Representative PARK, Soon Y. finds and alleges that HMSA's disclosures which purport to be written in *hanja honyong* are confusing to her.

88.    Class A Representative PARK, Soon Y. finds and alleges that HMSA's adverse benefits determination disclosures which purport to be written in *hanja honyong* are confusing to her.

21

89.     After she was recently informed of the benefits covered and excluded under the PLAN by a competent Korean interpreter, Class A Representative PARK, Soon Y. categorically denies that HMSA's disclosures of covered benefits and exclusions from coverage adequately informed her of the coverage under the PLAN.

90.     After she was recently informed of her grievance and appeal rights under the PLAN by a competent Korean interpreter, Class A Representative PARK, Soon Y. categorically denies that HMSA's adverse benefits determination disclosures informed her of her grievance and appeal rights.

91.     HMSA's improper and bad faith mishandling of Class A Representative PARK, Soon Y.'s claim for adult day care services has unduly and unreasonably increased her risks of injury, illness, and institutionalization.

*Class A Representative PARK, Sook Ja*

92.     At all relevant times herein, Class A Representative PARK, Sook Ja was a resident of the First Circuit and was duly enrolled in the PLAN and was eligible for all benefits covered by the PLAN.

93.     As is the case with many Class A Members, Class A Representative PARK, Sook Ja received her elementary and middle school education after the Korean conflict ended at a time when literacy was at its lowest in Korea and the education system was being rebuilt.

94.    Class A Representative PARK, Sook Ja received adult day care services five (5) weekdays and four (4) hours per week of personal assistance services from on or around May 7, 2018 to on or around August 17, 2019.

95.    On December 20, 2018, HMSA re-evaluated Class A Representative PARK, Sook Ja and determined that adult day care services were medically necessary for her.

96.    The adult day care services Class A Representative PARK, Sook Ja received included:

a.    monitoring of her physical and emotional appearance for signs of injury or distress,

b.    Physical activities to support and maintain her physical strength and mobility,

c.    Mental activities, including cognitive activities, society, and emotional support, to maintain her mental and emotional health status, and

d.    Nutrition, ensuring that Class A Representative PARK, Sook Ja received at least one complete and adequate meal per adult day care session.

97.    On June 21, 2019, HMSA reversed HMSA's previous determination and falsely and improperly determined that adult day care services

were ***not*** medically necessary for Class A Representative PARK, Sook Ja.

98.    HMSA discontinued coverage of Adult day care services and personal assistance services for Class A Representative PARK, Sook Ja on or around August 17, 2019.

99.    On or around February 2, 2020, HMSA approved coverage of personal assistance services for Class A Representative PARK, Sook Ja for fifteen (15) hours per week through and beyond the date hereof.

100.    HMSA suggests that it need not provide Adult day care services because personal assistance services are an acceptable substitute.

101.    Personal assistant services and adult day care services provide materially different services such that coverage of personal assistance services is not a one-for-one substitute for adult day care services.

102.    HMSA failed to provide Class A Representative PARK, Sook Ja with notice of her rights written disclosure of coverages and benefits, including information on coverage principles and any exclusions or restrictions on coverage. H.R.S. § 432:1-101.5 and 42 C.F.R. §§ 438.10, 438.404.

103.    Class A Representative PARK, Sook Ja admits that she is able to decode *hanja honyong* but she states that the ability to comprehend *hanja honyong* may not be assumed from facility with decoding *hanja honyong* unless the translation into *hanja honyong* is correct both structurally and contextually.

104.    The combination of personal assistance and adult day care

services that are medically necessary for Class A Representative PARK, Sook Ja is

the most cost effective alternative for her to remain safely in the community as

long as possible.

105.    Based upon HMSA's correct determination that Class A

Representative PARK, Sook Ja was at high risk for institutionalization, adult day

care services are medically necessary for her to remain safely in the community for

as long as possible.

106.    HMSA failed to promptly issue a benefit determination to Class

A Representative PARK, Sook Ja approving coverage of personal assistance or

adult day care services.

107.    Class A Representative PARK, Sook Ja finds and alleges that

HMSA's disclosures which purport to be written in *hanja honyong* are confusing

to her.

108.    Class A Representative PARK, Sook Ja finds and alleges that

HMSA's adverse benefits determination disclosures which purport to be written in

*hanja honyong* are confusing to her.

109.    After she was recently informed of the benefits covered and

excluded under the PLAN by a competent Korean interpreter, Class A

Representative PARK, Sook Ja categorically denies that HMSA's disclosures of

covered benefits and exclusions from coverage adequately informed her of the
coverage under the PLAN.

*Class B Representative PARK, Grace*

110.    At all relevant times herein, Class B Representative PARK,
Grace was a resident of the First Circuit and was duly enrolled in the PLAN.

111.    Class B Representative PARK, Grace disenrolled from the
PLAN to enroll in ALOHACARE.

112.    Class B Representative PARK, Grace was eligible for all
benefits covered by the PLAN until Class B Representative PARK, Grace
disenrolled in the PLAN to enroll with ALOHACARE.

113.    HMSA determined that adult day care services were medically
necessary for Class B Representative PARK, Grace and approved six (6) days per
week from on or around January 12, 2017, to on or around October 13, 2019.

114.    HMSA terminated Class B Representative PARK, Grace's
adult day care coverage effective October 13, 2019, after HMSA re-evaluated her
on September 10, 2019.

115.    Class B Representative PARK, Grace's primary care physician
thereupon conducted an independent evaluation of her and determined that she was
significantly at risk of institutionalization and injury (fourteen (14) points where
eleven (11) points is the threshold score for adult day care).

US_Active\119646836\V-1

116.    The adult day care services Class B Representative PARK,

Grace received included:

    a.    monitoring of her physical and emotional appearance for signs of

       injury or distress,

    b.    Physical activities to support and maintain her physical strength and

       mobility,

    c.    Mental activities, including cognitive activities, society, and

       emotional support, to maintain her mental and emotional health status,

       and

    d.    Nutrition, ensuring that Class B Representative PARK, Grace

       received at least one complete and adequate meal per adult day care

       session.

117.    ALOHACARE correctly determined, as HMSA previously did

in March 2017, that the combination of personal assistance and adult day care

services that are medically necessary for Class B Representative PARK, Grace

represent the most cost effective alternative for her to remain safely in the

community as long as possible.

118.    As is the case with many Class Members, Class B

Representative PARK, Grace received her elementary and middle school education

after the Korean conflict ended at a time when literacy was at its lowest in Korea

and the education system was being rebuilt.

119.    Class B Representative PARK, Grace admits that she is able to decode *hanja honyong* but she states that the ability to comprehend *hanja honyong* may not be assumed from facility with decoding *hanja honyong* unless the translation into *hanja honyong* is correct both structurally and contextually.

120.    HMSA failed to provide Class B Representative PARK, Grace with notice of her rights written disclosure of coverages and benefits, including information on coverage principles and any exclusions or restrictions on coverage. H.R.S. § 432:1-101.5 and 42 C.F.R. §§ 438.10, 438.404.

*Class B Representative KIM, Jae Sook*

121.    At all relevant times herein, Class B Representative KIM, Jae Sook was a resident of the First Circuit.

122.    Class B Representative KIM, Jae Sook has special health care needs because she has lost the use of her lower limbs and is unable to carry on the activities of daily living without the assistance of mechanical or personal aids.

123.    Class B Representative KIM, Jae Sook was enrolled as a member of ALOHACARE which determined that Adult day care was medically necessary for her for six (6) days per week beginning on May 1, 2018

124.    Class B Representative KIM, Jae Sook received only five (5) days per week of Adult day care covered by ALOHACARE starting July 1, 2018

US_Active\119646836\V-1

because there were no appropriate providers of Adult day care for Saturdays or Sundays.

125.   ALOHACARE also determined that ten (10) hours per week of personal assistance was medically necessary for Class B Representative KIM, Jae Sook.

126.   Class B Representative KIM, Jae Sook disenrolled from ALOHACARE effective January 1, 2020, and enrolled with HMSA because HMSA was contracted with a more appropriate personal assistance contractor.

127.   HMSA determined that Adult day care services were medically necessary for Class B Representative KIM, Jae Sook and approved and covered Adult day care services five (5) days per week from January 1, 2020.

128.   HMSA determined effective February 16, 2020, that 7.25 hours per week of level 1 personal assistance and 4 hours of level 2 personal assistance was medically necessary for Class B Representative KIM, Jae Sook, and subsequently authorized an increase of personal assistance hours to 14 hours per week from April 27 to August 27, 2020.

129.   On August 28, 2020, HMSA again increased Class B Representative KIM, Jae Sook's personal assistance hours to 27.5 hours per week, but  in the first week of September 2020 HMSA telephoned Class B Representative KIM, Jae Sook to inform her that HMSA was terminating coverage of Adult day

care services effective August 28, 2020, but has never issued a notice of action

informing Class B Representative KIM, Jae Sook of her rights to appeal the

termination of her Adult day care services which she says she needs more than the

additional personal assistance.

130.    HMSA has never sent Class B Representative KIM, Jae Sook

notice in writing of the change it instituted in her service plan terminating all Adult

day care services.

131.    Class B Representative KIM, Jae Sook disputes that the most

appropriate plan of service for her is 27.5 hours of personal assistance per week

because the personal assistants, while helpful, are not able to provide the range of

intervention and interaction she was receiving at Adult day care.

132.    The adult day care services Class B Representative KIM, Jae

Sook received included:

a.   monitoring of her physical and emotional appearance for signs of
     injury or distress,

b.  Physical activities to support and maintain her physical strength and
    mobility,

c.  Mental activities, including cognitive activities, society, and
    emotional support, to maintain her mental and emotional health status,
    and

30

d.  Nutrition, ensuring that Class B Representative KIM, Jae Sook

received at least one complete and adequate meal per adult day care

session.

133.   For the past two months Class B Representative KIM, Jae Sook

has never received from HMSA the required written notice that HMSA was

terminating coverage of adult day care services, or an explanation of the change in

coverage for personal assistance services, in violation of the PLAN and the

underlying Federal regulations.

134.   HMSA has denied medically necessary services, adult day care

and personal assistance services for numerous Class Members unduly and

unreasonably increasing the risk for each Class Member of injury, illness, and

institutionalization giving rise to claims of bad faith, negligent and intentional

infliction of emotional distress, and questions of law common to all Class

Members.

## DEFENDANT HMSA

135.   On information and belief, at all relevant times herein, HMSA

enjoyed the status of a Hawai`i mutual benefit society, doing business statewide in

the State of Hawai`i, with offices at 818 Keeaumoku Street, Honolulu, Hawai`i

96814, and held itself out to the public as "the largest provider of health care

coverage in the State."

31

136.    HMSA had duties in common to every Class Member to deal

fairly and in good faith with each of them in:

a.  providing them complete information about their benefits and rights in

understandable terms and language,

b.  fully complying with the contract for their services,

c.  complying with Hawaii's medical necessity law, H.R.S. § 432E-1.4,

and

d.  properly and correctly handling their claims for benefits and services

that were or are medically necessary for them.

137.    HMSA employs Registered Nurses and Social Workers who are

licensed by the State of Hawaii.

138.    The American Nurses Association ("ANA") has promulgated

the Nursing Code of Ethics With Interpretative Statements for use in determining

whether a nurse has carried out "nursing responsibilities in a manner consistent

with quality in nursing care and the ethical obligations of the profession."

139.    The National Association of Social Workers ("NASW") has

promulgated a Code of Ethics for Social Workers containing standards against

which the acts of social workers may be measured.

140.    Chapter 436B, H.R.S., which governs all professionals licensed

by the State of Hawaii mandates that licensees comply with the ethics and

standards for the licensees' respective professions and provides authority for

disciplinary action by the Board governing the respective profession, including loss

of license and potential fines for any act the Board determines violated the

applicable ethical standard(s).

141.   Registered Nurses HMSA employs to evaluate beneficiaries

potentially eligible for LTSS may be disciplined by the Hawaii Board of Nursing if

their conduct evaluating beneficiaries for LTSS violate the ANA Code of Ethics.

142.   Social Workers HMSA employs to evaluate beneficiaries

potentially eligible for LTSS may be disciplined by the Hawaii Professional and

Vocational Licensing Board if their conduct evaluating beneficiaries for LTSS

violate the NASW Code of Ethics.

143.   HMSA's provision of PLAN information and translations and

failure to comply with the PLAN terms and conditions which expressly incorporate

the medical necessity law, is generally applicable to all Class Members.

144.   A ruling on providing complete and understandable information

in compliance with H.R.S. § 432:1-101.5 and 42 C.F.R. §§ 431.206, 438.10,

438.71, and 438.404 affects all of the Class Members.

145.   A ruling on compliance with the terms and conditions of the

PLAN in handling claims affects all of the Class Members.

## STATEMENT OF THE CASE

146.   All purported Class Members are beneficiaries of Medicaid for medical services due to their economic and health status.

147.   All purported Class Members have claims against HMSA for wrongfully and unlawfully denying or delaying coverage of medically necessary benefits and services.

148.   All purported Class Members have claims against HMSA for wrongfully and unlawfully withholding or failing to provide them with understandable information about the PLAN and Class Members' rights and responsibilities in appealing from denials of services.

## Medicaid Long Term Care Services

149.   In 1965, Congress passed Title XIX of the Social Security Act, establishing the program of medical assistance known as Medicaid, which is codified at 42 U.S.C. §§ 1396 *et seq.* (referred to herein as "the Medicaid statute"). The Medicaid program is a cooperative arrangement between the Federal Government and States through which States provide essential health care services to needy individuals and families who cannot afford to pay for the services Medicaid makes available. The Medicaid program is jointly financed with federal and State funds. Participation in the Medicaid program by any State is voluntary. However, once such an election is made, the State must comply with all federal

34

requirements. Hawaii has elected to participate in the Medicaid program.

150.  Any State that has elected to participate in the Medicaid program must submit and have approved a State Medicaid plan, which contains provisions and requirements regarding groups of individuals covered, eligibility conditions, medical care and services, payment and compliance with program requirements. *See generally*, 42 U.S.C. §§ 1396a(a)(1)-(65) and 42 C.F.R. §§ 430 *et seq.*

151.  In 1976, Congress amended the Medicaid statute by adding a new section, 42 U.S.C. § 1396b (m), which allowed States to implement their Medicaid programs through a "managed care" model, as opposed to the fee-for-service structure of the original Medicaid Act.

152.  States implementing a Medicaid managed care program enter into contracts with eligible risk-bearing MMCOs under which contract an MMCO assumes the responsibility of providing Medicaid services through its own employees or by contracting with independent "providers" of such services.

153.  The Medicaid Act requires state Medicaid plans to include services on a continuing and long-term basis for children, adults, and seniors who lack the capacity for self-care due to a physical, cognitive, or mental disability or condition, known as LTSS.

154.    Medicaid is the primary payer across the nation for long-term care services.

155.    Medicaid allows for the coverage of LTSS through several vehicles and over a continuum of settings, ranging from home care or community-based long-term services and supports to institutional care.

156.    Federal Medicaid regulations have been frequently revised and updated to enhance the quality and scope of HCBS programs and protect beneficiaries who are receiving services and ensure that beneficiaries have full access to the benefits of community living and are able to receive services in the most integrated setting, and most recently to expand the options the Center for Medicaid Services has to enforce compliance by states receiving Federal Medicaid funds. *See* 79 FR 2947-3039.

157.    Medicaid's multi-year drive to expand HCBS services and emphasize long-term results over short-term costs is based upon the determinations that LTSS-eligible beneficiaries such as Class Representatives and Class Members live better, healthier, happier lives longer in the community and reduce the costs of providing their care

158.    HMSA is guilty of taking the short view of limiting HMSA's costs in the short term, maximizing its profits and betting that DHS will be

36

compelled to fund the higher cost of Class Representatives and Class Members
care even if they are enrolled with HMSA QUEST Integration.

**The QUEST Integration PLAN for Long Term Care Services**

159.   DHS "implemented" the QUEST Integration for all Medicaid
beneficiaries in January 2015.

160.   HMSA bid for and was awarded a contract with DHS bound by
promises and a large share of the annual approximately $2.5 billion the State of
Hawaii pays for medical assistance arranged and provided by HMSA and three
other managed care plans.

161.   LTSS covered by QUEST Integration include such HCBS as
transportation, home maintenance, personal assistance to perform chores and
shopping, and more personal services such as assistance with the primary activities
of daily living ("ADLs") as bathing and dressing for beneficiaries who lack the
capacity for self-care or to maintain their living spaces.

162.   LTSS also covers adult day care for beneficiaries residing in
their own homes in the community.

163.   Adult day care provides observation and supervision of
beneficiaries in a facility hosting a group of day care eligible beneficiaries to
coordinate their individual behavioral, medical, social and service plans.

164.    The purpose of adult day care is to restore or maintain a beneficiary's capacity to remain safely in the community.

165.    HMSA's contract with DHS mandates that beneficiaries potentially eligible for LTSS be evaluated by a Registered Nurse and a Social Worker.

166.    It is highly unlikely that the needs of aged, blind, and disabled beneficiaries for LTSS services diminish as the beneficiaries age and thus it must be presumed (until proven otherwise) that the Registered Nurses and Social Workers HMSA assigned to evaluate/assess Class Representatives and Class Members violated their respective ethical codes in issuing determinations reducing or terminating LTSS services previously determined to be medically necessary.

167.    Class Representatives and Class Members thus may have claims against their assigned HMSA Registered Nurses and Social Workers.

168.    Pursuant to the requirements of the Medicaid Act and 42 C.F.R. § 438.71, HMSA and other contracting MCOs must faithfully implement and carry out the mandatory beneficiary support system which includes assistance for HMSA enrollees in understanding managed care.

169.    The beneficiary support system for LTSS must specifically provide HMSA enrollees with:

    a.  a functioning and accessible access point for complaints and concerns

        about HMSA;

    b.  Education on:

        i.  grievance and appeal rights within HMSA,

        ii.  the State fair hearing process,

        iii.  enrollee rights and responsibilities, and

        iv.  resources outside of HMSA for accessing benefits and rights.

**Class Action Appropriates**

170.   All of the Class Representatives and Class Members are Medicaid eligible beneficiaries based upon their economic standing and low income.

171.   All of the Class Representatives and Class Members live alone or with a spouse who is also a Korean immigrant, who is also Medicaid-eligible, and requires a translator to access benefits.

172.   The Class Representatives and Class Members and are all immigrants born in Korea before or during WWII during the Japanese occupation of Korea dating back to before Japan annexed Korea as a colony in 1910.

173.   The first language of all Class Representatives and Class Members is Korean.

174.   Japanese was the primary language taught in the Korean school system Japan established prior to WWII, but Korean spoken and written language

was also taught in varying degrees along with Korean history.

175.   The school system in Korea was torn apart during WWII during which time there was widespread forced labor of primary schoolers and teenagers as well as adults.

176.   Korea was divided by the Allied powers after Japan surrendered control at the end of WWII.

177.   It is well-known that literacy in Korea fell to 22 percent post-WWII through the end of the Korean conflict.

178.   Class Representatives and Class Members and have varying degrees of spoken and written English facility ranging from no facility to the ability to recognize a relatively small vocabulary of written English and understand and communicate some needs.

179.   The lowest known level of Korean school education among the Class Representatives and Class Members is grade 3 which cannot be mistaken to be equivalent to the third grade in the U.S.

180.   The highest known level of Korean school education among the Class Representatives and Class Members is 16 years, also cannot to be mistaken for 16 years of education in the U.S.

181.   It is impossible to know today without literacy testing—nearly seventy years since the Class Representatives and Class Members were schooled in

40

Korea—the extent to which Class Representatives' and Class Members'

understanding of HMSA's translations have the same meaning as the English

language version means to a literate English first language speaker.

182.   To access or understand their Medicaid benefits and their

Medicaid-related rights all of the Class Representatives and Class Members require

a Korean translation that is level-of-education and culturally appropriate.

183.   HMSA has issued explanations of Medicaid benefits to Class

Representatives and Class Members which are so fatally flawed that Class

Representatives and Class Members do not understand their Medicaid benefits and

any exclusions of, or limits on, medical services.

184.   The proposed class which Class A Representatives and Class B

Representatives seek to represent is so numerous that joinder of all members is

impracticable.

185.   There are questions of law and/or fact common to all members

of the purported class.

186.   The claims of the Class A Representatives and Class B

Representatives are typical of the claims of the purported class.

187.   With the assistance of class counsel, the Class A

Representatives and Class B Representatives will fairly and adequately protect the

interests of the purported class.

**Facts of HMSA's Program of Discrimination Against Korean Elders**

188.   HMSA denied Class Members and Class B Members medically necessary benefits and services after previously approving those benefits as medically necessary.

189.   Class Representatives and Class Members were at risk of institutionalization and injury as much or more when HMSA later denied them benefits HMSA had previously approved.

190.   HMSA unlawfully took advantage of all the language limitations of all Class Representatives and Class Members.

191.   HMSA's program of active discrimination against Class Representatives and Class Members manifested in 2019 in the reversals of coverage for medically necessary adult day care and failures to provide medically necessary personal assistance.

192.   Class Representatives and Class Members were all known by HMSA to lack the ability to fully and safely care for themselves without assistance.

193.   Class Representatives and Class Members were all known by HMSA to be at risk of institutionalization and injury on account of their disabilities.

194.   Class Representatives and Class Members were all known by HMSA to lack the ability to understand disclosures of PLAN and LTSS benefits printed in English.

195.   Class Representatives and Class Members were all known by HMSA to lack the ability to understand adverse benefit determinations printed in English.

196.   Class Representatives and Class Members were all known by HMSA to lack the ability to understand their grievance and appeal rights and responsibilities printed in English.

197.   Class Representatives and Class Members did not have an adequate understanding of the PLAN benefits because HMSA failed to provide to provide a benefit support system that complied with the spirit as well as the letter of 42 C.F.R. § 438.71.

198.   Class Representatives and Class Members did not understand their rights and responsibilities concerning HMSA adverse benefit determinations because HMSA failed to provide to provide a benefit support system that complied with the spirit as well as the letter of 42 C.F.R. § 438.71.

199.   Class Representatives and Class Members did not understand their grievance and appeal rights and responsibilities because HMSA failed to

provide to provide a benefit support system that complied with the spirit as well as
the letter of 42 C.F.R. § 438.71.

200.   HMSA's systematic, knowing, and economically selfish
program of discrimination deprived Class Representatives and Class Members of
any effective recourse to protect medically necessary benefits to which they were
entitled.

201.   HMSA refused to permit independent evaluations/second
opinions of Class Representatives and Class Members on which Medicaid benefits
would be based.

202.   HMSA controls the evaluations for HMSA's own benefit in
denying medically necessary benefits.

203.   Class B Representatives and Class B Members in some
instances disenrolled and enrolled in ALOHACARE to have an independent
evaluation/second opinion.

204.   ALOHACARE determined that adult day care and HCBS
personal assistance services were medically necessary for Class B Representatives
and Class B Members.

205.   In all wrongful or unlawful conduct herein, HMSA has acted
wantonly or oppressively, and with such malice as implies a spirit of mischief or
criminal indifference to civil obligations.

206.   The SARS-CoV-2 infection aka COVID-19 or coronavirus

disease pandemic ("PANDEMIC") has transformed our world, causing a public

health emergency ("PHE")

207.   Thus, in 2020, we have a new definition of "Essential Worker."

The Essential Worker is loosely defined in the vernacular and not defined by law.

However, upon information and belief, the public has defined "Essential Worker"

as anyone associated with health care, groceries stores, gas stations, etc. Regardless

the vagueness of the definition of Essential Worker, Class Representatives' choice

of health care provider, adult day care providers qualify as an Essential Worker.

208.   Health care services, in general, have always undergone a

shortage of health care providers. During the ongoing PHE, a normally fragile

health care system has been catastrophically upended. Refusing to allow any

qualified provider to render medically necessary services during thus global PHE is

not only illogical, but ludicrous.

209.   In response to the PANDEMIC, the Hawaii State Med-QUEST

Division received approval from the Center for Medicaid & CHIP Services for the

"Emergency Preparedness and Response Appendix K" effective from January 27,

2020 through January 26, 2021, suspending, *inter alia*, limits on the number of

hours of HCBS services for members at risk of deteriorating to the institutional

level of care, expressly setting a lower limit of 5 functional points to receive HCBS

services, waiving the limit of ten (10) hours per week for Level 1 personal

assistance, and adding services and expanding service locations to address the

emergency situation, authorizing the provision of adult day care services in Class

Members' homes by telehealth or telephonic methods.

## COUNT I
(Declaratory Judgment – Improper Gatekeeping
in Violation of Appendix K and 42 C.F.R. § 438.208)

210.   Class Representatives repeat, reallege and incorporate by

reference the allegations contained in the preceding paragraphs above as though

fully set forth herein.

211.   This claim is alleged on behalf of all Class Representatives and

all Class Members.

212.   An actual and justiciable controversy exists between all Class

Members and HMSA regarding whether Class Representatives and all Class

Members received the service coordination, assessments, and service plans the

letter and spirit of PLAN and 42 C.F.R.  § 438.208 require.

213.   An actual and justiciable controversy exists between Class

Members and HMSA regarding whether service coordination and assessment was

used by HMSA to improperly restrict or limit coverage of medically necessary

LTSS for Class Representatives and Class Members.

214.   In derogation and violation of Appendix K, HMSA has systematically reduced or eliminated LTSS services, including personal assistance and adult day care for some Class Representatives and Class Members, again taking advantage of their cultural and linguistic differences from the general population to improperly reduce or eliminate HCBS services.

215.   All Class Representatives and all Class Members need the declaratory and other relief requested herein to avoid loss of function because HMSA's practices deprived them of medically necessary services covered by the PLAN and HMSA's contract with DHS, including personal assistance and Adult day care.

216.   Class Representatives and Class Members are entitled to an order declaring that this Court has jurisdiction of a real and active justiciable controversy between Class Representatives and Class Members and HMSA.

217.   HMSA is required as a term and condition of its contract with DHS, the PLAN, to provide service coordination, assessments, and service plans that meet the standards intended by the PLAN and 42 C.F.R. § 438.208.

218.   HMSA was and is required by Appendix K to refrain from reducing or eliminating personal assistance or adult day care services, and to provide services for all Class Representatives and Class Members determined to have a score of five (5) or more functional points.

47

219.    Class Representatives and all Class Members are entitled to an order declaring the legal meaning and consequences of service coordination, assessment, and service plans for Class Representatives and all Class Members in each pursuing their claims.

220.    Class Representatives and all Class Members are entitled to an order declaring that HMSA violated or failed to comply with the standards intended by the PLAN and 42 C.F.R. § 438.208.

221.    Class Representatives and all Class Members are entitled to an order declaring that HMSA violated or failed to comply with Appendix K.

## COUNT II
(Declaratory Judgment – Medical Necessity of HCBS Services)

222.    Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

223.    This claim is alleged on behalf of all Class Representatives and all Class Members.

224.    An actual and justiciable controversy exists between all Class Members and HMSA regarding whether the PLAN covers the HCBS services all Class Members seek.

US_Active\119646836\V-1

225.   An actual and justiciable controversy exists between Class

Members and HMSA regarding the medical necessity of HCBS for all Class

Representatives and all Class Members.

226.   Declaratory judgment interpreting the coverage of HCBS under

the PLAN will assist all Class Representatives and all Class Members in seeking

relief, including specific performance and damages.

227.   All Class Representatives and all Class Members need the

declaratory and other relief requested herein to avoid loss of function because

HMSA's practices deprived them of medically necessary services covered by the

PLAN and HMSA's contract with DHS, including personal assistance and Adult

day care.

228.   Class Representatives and Class Members are entitled to an

order declaring that this Court has jurisdiction of a real and active justiciable

controversy between Class Representatives and Class Members and HMSA.

229.   The PLAN includes coverage of medically necessary HCBS for

Class Members under sections 40.210 and 40.700, et seq. of HMSA's contract with

DHS.

230.   Class Representatives and all Class Members are entitled to an

order declaring the legal meaning and consequences of the PLAN coverage of

HCBS to assist Class Representatives and all Class Members in each pursuing their

claims.

## COUNT III
(Declaratory Judgment –Notice and Disclosure and Cultural Competency
Violations)

231.    Class Representatives repeat, reallege and incorporate by

reference the allegations contained in the preceding paragraphs above as though

fully set forth herein.

232.    Pursuant to the PLAN and Federal regulations, including 42

C.F.R. §§ 431.206, 431.210, 431.221, 431.242, 438.10, 438.71, and 438.404, all

Class Representatives and all Class Members were and are entitled to full and

complete understandable, culturally appropriate Korean translations of their PLAN

benefits and rights, and HMSA actions affecting their benefits and services.

233.    Pursuant to H.R.S. §§ 432-102.5 and 431:10-109 HMSA was

required to provide all Class Representatives and all Class Members with complete

and understandable information about their PLAN benefit coverage, exclusions,

and appeal rights.

234.    Pursuant to 42 C.F.R. § 438.71 all Class Representatives and all

Class Members have a protected right to representation in accessing their Medicaid

benefits.

235.    Based on the facts alleged herein above Class Representatives

50

and Class Members are entitled to an order declaring that HMSA violated the

cultural competency requirements of the PLAN and Federal regulations and failed

to provide them with complete and understandable information about their PLAN

benefit coverage, exclusions, and appeal rights in violation of 42 C.F.R. §§

431.206, 438.10, 438.71, and 438.404.

236.    Based on the facts alleged herein above Class Representatives

and Class Members are entitled to an order declaring that HMSA violated H.R.S.

§§ 432-102.5 and 431:10-109 by failing to provide or withholding complete and

understandable, culturally appropriate information about Class Members' PLAN

benefit coverage, exclusions, and appeal rights.

## COUNT IV
(Declaratory Judgment – Violation of Due Process Protections)

237.    Class Representatives repeat, reallege and incorporate by

reference the allegations contained in the preceding paragraphs above as though

fully set forth herein.

238.    HMSA withheld, misrepresented, and obfuscated essential

information on due process rights including grievances and appeals rights which 42

C.F.R. §§ 431.206, 42 C.F.R., 431.210, 431.242, 438.10, 438.71, and 438.404

required HMSA to provide.

239.    HMSA utterly failed to confirm whether Class Representatives

or Class Members understood or were able to understand the *hanja honyong*

51

notices HMSA sent them.

240.   HMSA instead published information on Class Members' due

process rights guaranteed by Federal law and Regulations in *hanja honyong* notices

which are confusing and improper translations that fail to convey the information

persons with Class Representatives' and Class Members' background and

education are known to have.

241.   HMSA wrongfully and unlawfully refused to waive the appeal

deadlines for Class Representatives and Class Members when Class Counsel

demonstrated that HMSA failed to provide understandable notices of appeal and

grievance rights.

242.   HMSA violated the requirement of 42 C.F.R. § 431.221 to

provide meaningful and adequate assistance to Class Representatives and Class

Members in submitting appeals of adverse benefit determinations and interfered

falsely, maliciously, and unlawfully with Class Representatives' and Class

Members' attempts to secure the assistance of counsel on their own.

243.   Based on the facts alleged herein above Class Representatives

and Class Members are entitled to an order declaring that HMSA wrongfully and

deprived Class Members of the due process rights guaranteed by the Medicaid Act,

42 U.S.C. 1396(a)(3) and the implementing and interpretive regulations, 42 C.F.R.

§§ 431.206, 42 C.F.R., 431.210, 431.242, 438.10, 438.71, and 438.404, and the right to counsel of their choice.

## COUNT V
(Declaratory Judgment – Breach of the Duty of Good Faith and Fair Dealing)

244.    Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

245.    All Class Representatives and Class Members were intended third party beneficiaries of the PLAN.

246.    At all relevant times the PLAN constituted a contract by HMSA with the State of Hawaii the purpose of which was to benefit all Class Representatives and all Class Members.

247.    At all relevant times Class Representatives and Class Members were aged and members of the class of elderly persons for whom the State of Hawaii has enacted statutes to protect them from neglect and abuse.

248.    At all times when Class B Representatives and all Class B Members were enrolled in the PLAN, HMSA had a duty to act in good faith and deal fairly with Class B Members in handling their claims for medically necessary services.

249.    HMSA's wrongful and unlawful denials of medically necessary services to Class B Representatives and Class B Members compelled all Class B

53

Representatives and all Class B Members to disenroll from the PLAN and enroll

with ALOHACARE to remain in the least restrictive setting and protect their

personal health and wellbeing.

250.    ALOHACARE's prompt coverage of benefits for Class B

Representatives and Class B Members that HMSA had previously denied

evidences that HMSA's denials of coverage were, unreasonable, wrongful and

unlawful.

251.    HMSA's violations of the Medicaid Act and its regulations, and

violations of Hawai`i's Insurance Code denying covered benefits to Class

Representatives and Class Members alleged herein evidences bad faith

discriminatory animus towards Korean elders with limited English language

understanding and facilities.

252.    Based on the facts alleged herein above all Class

Representatives and all Class Members are entitled to an order declaring that

HMSA mishandled and wrongfully and unreasonably denied medically necessary

services in violation of HMSA's duty of good faith and fair dealing to Class B

Representatives and Class Members.

253.    Based on the facts alleged herein above all Class

Representatives and all Class Members are entitled to an order declaring that

HMSA's failure to provide full, accurate, proper, and understandable translations

of English guides, handbooks, and notices relating to their access to medical care,

covered services, and rights to submit grievances and appeal adverse decisions

breached HMSA's duty of good faith and fair dealing with Class A Members and

Class B Members.

## COUNT VI
(Declaratory Judgment - Elder Abuse)

254.    Class Representatives repeat, re-allege and incorporate by

reference the allegations contained in the preceding paragraphs above as though

fully set forth herein.

255.    HMSA knew that depriving Class Representatives and Class

Members of medically necessary HCBS benefits would place them at risk of harm

and of being confined to a more restrictive setting.

256.    HMSA used their position of advantage and power over the

health and safety of Class Representatives and Class Members to wrongfully

intimidate them into refraining from exercising or pursuing their rights.

257.    At all relevant times Class Representatives and Class Members

were aged and were members of the class of elderly persons who were protected

from neglect, abuse, and bullying by H.R.S. § 28-94.

258.    Based on the facts alleged herein above all Class

Representatives and Class Members are entitled to an order declaring that HMSA

violated H.R.S. § 28-94.

55

**COUNT VII**
(Violation of 42 U.S.C. § 18116)

259.    Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

260.    As a result of HMSA's conduct, Class Representatives and Class Members were discriminated against and excluded from participation in or denied the benefits of medically necessary HCBS services.

261.    HMSA's conduct in this regard includes the acts of certain of its employees who, motivated by the national origin and/or limited English proficiency of Class Representatives and Class Members, deny benefits to Class Representatives and Class Members born outside the United States, who have immigrated to the United States, and/or have limited English proficiency, and/or for whom  English is not a  first language, and/or who speak English with an accent.

262.    HMSA's policies, methods, and criteria for evaluating the medical necessity of LTSS services also have a disproportionate and adverse effect on  Class Representatives and Class Members, as individuals born outside the United States,  who have immigrated to the United States, and/or have limited English proficiency, and/or for whom  English is not a  first language, and/or who speak English with an accent, are more likely to be denied coverage for HCBS

56

services than individuals without those characteristics.

263.   The HCBS services constitute a health program or activity for which HMSA receives Federal financial assistance, such as credits, subsidies, grants, loans, and contracts related to provision of services under the PLAN.

264.   The LTSS services available under HMSA's health plan are administered by DHS under authority granted by the Centers for Medicare & Medicaid Services, an executive agency of the Federal government, and an entity established under Title 42 of the United States Code.

265.   As a direct result of HMSA's conduct, Class Representatives and Class Members have suffered damages in an amount to be proven at trial.

## COUNT VIII
(Violation of Haw. Rev. Stat. Chapter 480)

266.   Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

267.   Class Representatives and Class Members are consumers.

268.   HMSA acted deceptively and/or misled Class Representatives and Class Members as to the availability of coverage for HCBS services under the PLAN.

269.   Due to its improper handling of HCBS services under the PLAN, HMSA is competing unfairly.

270.   As a direct result of HMSA's conduct, Class Representatives and Class Members have suffered damages in an amount to be proven at trial.

## COUNT IX
### (Class Certification)

271.   Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

272.   Class Representatives and Class Members are entitled to an order permitting Counts I through VIII to be maintained as a class action on behalf of the Class Members with Class Counsel as the attorneys for the Class.

## COUNT X
### (Injunctive Relief)

273.   Class Representatives repeat, reallege and incorporate by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

274.   ALOHACARE's prompt coverage of HCBS benefits for Class B Representatives and Class B Members evidences that HMSA has systematically denied medically necessary HCBS benefits to Class Representatives and Class Members.

275.   Class Representatives' allegations herein establish a likelihood of success on the merits of their requests on their behalf and behalf of Class

Members because individual Class Representatives and Class Members will suffer

irreparable harm if the Court does not grant a temporary restraining order

prohibiting HMSA and HMSA from terminating or reducing the benefits of any

Class Representative or Class Member (whether potential Class A Member or

actually enrolled Class A Member of this class action).

276.    A temporary restraining order will preserve the status quo and

prevent potentially irreparable harm that could befall any individual Class Member

who was denied medically necessary HCBS services, until the parties may be

heard in a full hearing on a mandatory injunctive relief from improper denials and

to preserve and reinstate appeal rights for Class Members enrolled with HMSA.

277.    The PLAN requires HMSA to provide medically necessary

HCBS services and thus HMSA can hardly credibly argue that a temporary

restraining order would harm HMSA.

278.    Class Representatives' allegations herein establish a likelihood

of success on the merits of their requests on their behalf and behalf of Class

Members because individual Class Representatives and Class Members will suffer

irreparable harm if the Court does not grant a preliminary injunction mandating

that HMSA authorize independent evaluations by qualified providers and coverage

of all HCBS services, including personal assistance Level 1 and Level 2 and adult

day care services, instead of evaluations by HMSA's employed Registered Nurses

and Social Workers, as such evaluations determine are medically necessary for

such individual Class Representatives or Class Members and should be conducted

objectively because the substantial questions exist whether HMSA's employed

Registered Nurses and Social Workers have made objective determinations

compliant with the standards governing their respective professions.

279.   Preliminary and permanent injunctive relief is in the public

interest as are all the denials of all covered as material benefits which are shown to

be medically necessary services.

280.   Preliminary and permanent injunctive relief is in the public

interest because it is essential to have confidence in the objectivity and

professionalism of licensed professionals practicing in the State of Hawaii

irrespective of their employment circumstances.

281.   The balance of equities favors Class Representatives and Class

Members because they will suffer actual physical hardships of a serious and

potentially permanent nature that may result in disability and an increased need for

services that increase their costs and the costs of providing health care.

282.   HMSA will incur a relatively minor short-term expense as a

result of any temporary, preliminary, or permanent injunctive relief sought herein

which it is reasonable to conclude will be offset by avoided costs for higher levels

of care and additional medical care that could result from denying medically necessary HCBS services.

283.    For all of the foregoing reasons and facts, the balance of the equities strongly favors Class Representatives and Class Members and disfavors HMSA.

284.    HMSA has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

285.    The public interest in providing that aged poor individuals are provided the least restrictive settings is served by promptly and adequately providing medically necessary care and services, and in eliminating discriminatory and the potential for discriminatory conduct wherever it exists.

286.    The public interest in stamping out discrimination based on race or ethnicity strongly supports issuance of injunctive relief requiring HMSA to reform its practices.

287.    All Class Representatives and all Class Members are entitled to an order requiring HMSA to furnish Class Representatives and all other Class Members with notice of their rights to compensation and coverage of benefits translated into Korean *hanja honyong* by the translators Class Representatives and Class Counsel designate.

288.    Class and Representatives and all Class Members are entitled to orders providing Class Representatives and Class Members with further relief, including preliminary and permanent injunctive relief to instate and re-instate coverage of HCBS including but not limited to appropriate personal assistance services and appropriate adult day care services in the manner and amount determined by evaluators this Court determines to be independent and objective.

## **PRAYER FOR RELIEF**

WHEREFORE, Class Representatives pray on behalf of themselves and all Class Members that judgment be entered against HMSA and in favor of Class Representatives and Class A and Class B Members as follows:

A.    Certification of the individual Class Members as a Class pursuant to HRCP Rule 23(b);

B.    For an order declaring that an actual and justiciable controversy exists between all Class Members and HMSA regarding HMSA's use of service coordination, assessments, and service plans to improperly limit or restrict medically necessary HCBS for Class Representatives and Class Members;

C.    For an order declaring that an actual and justiciable controversy exists between all Class Members and HMSA regarding the medical necessity of HCBS for all Class Representatives and all Class Members;

D.     For an order declaring that the PLAN covers the appropriate HCBS services each individual Class Representative and Class Member seeks;

E.     For an order declaring that HMSA violated the provisions of the PLAN requiring HCBS services;

F.     For an order declaring that HMSA violated the PLAN and 42 C.F.R. 438.208 by utilizing service coordination, assessment, and service plans to deny medically necessary services to Class Representative and Class Members;

G.     For an order declaring that HMSA violated or failed to comply with Appendix K by reducing or eliminating services to Class Representatives and Class Members;

H.     For an order declaring HMSA failed to comply with the PLAN requirements and HMSA's policy mandating cultural competency and the antidiscrimination prohibitions of the Affordable Care Act by providing Class Representatives and Class Members translations of guides to benefits, notices, and disclosures of rights in Korean that actually clearly and fairly communicate rights and the responsibilities of a Class Member in pursuing an appeal;

I.     For an order declaring that HMSA breached the terms and conditions of the PLAN requiring coverage of medically necessary and appropriate HCBS with respect to all Class Representatives and all Class Members;

63

J.      For an order declaring that HMSA violated the Notice and

Disclosure requirements of federal regulations 42 C.F.R. §§ 431.206, 431.210,

431.221, 431.242, 438.10, 438.71, and 438.404.

K.      For an order declaring that HMSA violated the Hawaii

Insurance Code information requirements of H.R.S. §§ 432-102.5 and 431:10-109;

L.      For an order declaring that HMSA violated Class

Representatives' and Class Members' due process protections guaranteed by 42

C.F.R. §§ 431.206, 42 C.F.R., 431.210, 431.242, 438.10, 438.71, and 438.404;

M.      For an order declaring that the HMSA's actions violate the

Fourteenth Amendment;

N.      For an order declaring that HMSA mishandled and wrongfully

denied Class Members' LTSS HCBS benefits breached the covenant of good faith

and fair dealing;

O.      For an order declaring that HMSA violated H.R.S. § 28-94;

P.      For temporary, preliminary, and permanent injunctive relief as

requested in Count X above enjoining HMSA from erroneously denying Class

Members' medically necessary heath care services to any qualified provider;

Q.      For attorneys' fees and costs under 42 U.S.C. § 1988;

R.      For attorneys' fees, costs, and treble damages under Haw. Rev.

Stat. Chapter 480;

S.    For punitive damages;

T.    For any and all other relief that this Court may deem just and

proper.

Respectfully submitted.

Dated:  Honolulu, Hawai`i, October 28, 2021

RAFAEL DEL CASTILLO & ASSOCIATES and
TAMASHIRO SOGI & BONNER


*/s/* Rafael del Castillo
RAFAEL G. DEL CASTILLO
ADDISON D. BONNER
TREVOR N. TAMASHIRO

Attorneys for Plaintiffs

US_Active\119646836\V-1