IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PARK, SOOK JA; PARK, SOON Y.; PARK, GRACE; and KIM, JAE SOOK, on behalf of themselves and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>HAWAII MEDICAL SERVICE ASSOCIATION,<br><br>     Defendant. | CIV. NO. 21-00039 JMS-WRP<br><br>ORDER GRANTING DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS REGARDING COUNTS VI AND VIII OF THE FIRST AMENDED COMPLAINT, ECF NOS. 65, 66 |

### ORDER GRANTING DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS REGARDING COUNTS VI AND VIII OF THE FIRST AMENDED COMPLAINT, ECF NOS. 65, 66

### I. INTRODUCTION

Before the court are two Motions for Partial Judgment on the Pleadings, ECF Nos. 65 and 66, filed by Defendant Hawaii Medical Services Association ("HMSA" or "Defendant"). The first Motion seeks judgment on Count VI of Plaintiffs'[1] First Amended Complaint ("FAC"), ECF No. 57, on the

---

[1] The individual Plaintiffs are Sook Ja Park, Soon Y. Park, Grace Park, and Jae Sook Kim. ECF No. 57 at PageID # 503. The First Amended Complaint is also styled as class action on behalf of two classes, "Class A" and "Class B," *see id.* at PageID ## 503–05, the compositions of which are not relevant to this Order.

basis that Plaintiffs lack statutory standing to assert a claim under Hawaii Revised Statutes ("HRS") § 28-94 because only the Attorney General of the State of Hawaii can bring a claim under that statute. ECF No. 65-1. The second Motion seeks judgment on Count VIII, on the basis that Plaintiffs lack statutory standing to assert a claim under HRS § 480-2 because they are not "consumers," as defined in HRS § 480-1, and also on the basis that the FAC fails to allege facts concerning § 480-2's requirement that there be competitive harm. ECF No. 66-1. For the reasons provided below, the Motions are GRANTED.

## II.  BACKGROUND

This case concerns the State of Hawaii's Medicaid program. *See* ECF No. 57. "Medicaid is a joint state-federal funding program for medical assistance in which the Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume." *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985). Hawaii's Department of Human Services ("DHS") administers the state's "Plan for Medicaid, QUEST Integration," i.e., the "PLAN." ECF No. 57 at PageID # 506, ¶¶ 5, 8. Through that plan, "DHS contracts with Medicaid Managed Care Organizations ('MMCO') such as HMSA . . . to arrange or provide medically necessary services, including [Long-Term Services and Supports ('LTSS') benefits] and certain home and community-based services ('HCBS')," for

Medicaid enrollees such as Plaintiffs. *Id.* at ¶ 6.  As Medicaid enrollees, Plaintiffs do not pay for services rendered by HMSA—"the State of Hawaii pays for medical assistance arranged and provided by HMSA." *Id.* at PageID # 539, ¶ 160. Plaintiffs are thus "beneficiar[ies]." *Id.* at PageID # 506, ¶ 9.  And although Plaintiffs were assigned by DHS to a particular MMCO at the outset of their enrollments, they did have the ability to change MMCOs after that initial assignment. *Id.*

The FAC is founded on two allegations: first, that HMSA "fail[ed] to properly apply or to reach the correct lawful result of applying the medical necessity criteria which are mandated by Hawaii law to govern covered LTSS benefits." *Id.* at PageID # 507, ¶ 12.  As a result, benefits were improperly denied to Plaintiffs, who are "aged, blind, [or] disabled" and "living alone on very limited means," "all hav[ing] no caregiver" and "unable to care for themselves with sufficient independence to live safely every day in the community without assistance." *Id.* at PageID ## 507, 510.  Some Plaintiffs were allegedly forced to remain HMSA enrollees despite "HMSA continu[ing] to deny [those Plaintiffs] medically necessary covered LTSS benefits," because disenrolling "would [have] deprive[d] them of the relationships they [had] with their (comparatively rare) Korean-speaking providers who participate only with HMSA." *Id.* at PageID # 508, ¶¶ 13, 15.  Other Plaintiffs "were compelled to disenroll from HMSA in

order to be covered for medically necessary LTSS services," and "suffered the loss of valuable established relationships with Korean-speaking providers, together with the concomitant loss of continuity of care, a valuable health asset." *Id.* at ¶ 14.

The second allegation is that all Plaintiffs have Korean backgrounds and speak Korean as their first language, causing "challenging language issues, oral and written," with respect to the delivery of healthcare services in a primarily English-speaking country. *See id.* at PageID ## 509, 541–42. HMSA, the FAC alleges, "was contractually obligated to effectively address cultural and language barriers to ensure the delivery of appropriate and necessary health services to each [Plaintiff]," but "HMSA's translations violated the cultural competency terms of its contract with DHS because its translations fail to provide Class Representatives and Class Members proper notice of their Medicaid rights and benefits." *Id.* at PageID # 509, ¶¶ 17, 19.

Those two allegations provide the foundation for the claims asserted in Counts I through X. *See id.* at PageID ## 548–64. Count VI asserts a claim for "Declaratory Judgment - Elder Abuse" under HRS § 28-94, by alleging that Plaintiffs "were members of the class of elderly persons who were protected from neglect, abuse, and bullying by [§ 28-94]," and that "HMSA used [its] position of advantage and power over the health and safety of Class Representatives and Class

4

Members to wrongfully intimidate them into refraining from exercising or pursuing their rights." ECF No. 57 at PageID # 557. Count VI requests "an order declaring that HMSA violated" the elder-abuse statute. *Id.*

Count VIII asserts claims for "Violation[s] of [HRS] Chapter 480," Hawaii's statute prohibiting unfair and deceptive acts and practices in the conduct of any trade or commerce ("UDAP"). *Id.* at PageID # 559. Count VIII alleges that Plaintiffs are "consumers" under HRS § 480-1, and that "HMSA acted deceptively and/or misled [Plaintiffs] as to the availability of coverage for HCBS services under the PLAN." ECF No. 57 at PageID # 559 (asserting claim under the "deceptive acts or practices" prong of HRS § 480-2(a)). Count VIII further alleges that "HMSA is competing unfairly" "[d]ue to its improper handling of HCBS services under the PLAN." ECF No. 57 at PageID # 559 (asserting claim under the "[u]nfair methods of competition" prong of § 480-2(a)). Count VIII requests "damages in an amount to be proven at trial." ECF No. 57 at PageID # 560.

HMSA filed both Motions on November 29, 2021. ECF Nos. 65, 66. Plaintiffs belatedly filed their Oppositions on January 4, 2022, *see* ECF Nos. 77 and 78, but the court granted Plaintiffs an extension after the fact, *see* ECF No. 81. HMSA submitted Replies on January 13, 2022. ECF Nos. 90, 91. And the court held a hearing on the Motions on January 18, 2022. ECF No. 94.

### III.  STANDARD OF REVIEW

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Analysis under Rule 12(c) is "substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted).  Courts must accept as true the facts as pled by the non-movant and construe the pleadings in the light most favorable to the nonmoving party.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011).

Although Rule 12(c) does not expressly address leave to amend versus final dismissal, courts have the discretion to grant a Rule 12(c) motion with leave to amend.  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).  "Leave to amend may be denied if a court determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,'" i.e., when there is futility.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)).

# IV. ANALYSIS

As for HMSA's Motion challenging Plaintiffs' elder-abuse claim under HRS § 28-94, the court grants that Motion and dismisses Plaintiffs' claim because they lack standing under both § 28-94 and the U.S. Constitution. Specifically, Plaintiffs cannot enforce § 28-94—either directly or in a declaratory-judgment posture—because they are not the Attorney General for the State of Hawaii. Further, Plaintiffs seek an impermissible advisory opinion from this court via their request for a declaratory judgment that "may be enforced" by the attorney general. As for HMSA's Motion challenging Plaintiffs' deceptive-practices claim and unfair-competition claim under HRS § 480-2, the court grants that Motion and dismisses Plaintiffs' claims. The court dismisses the deceptive-practices claim with prejudice because Plaintiffs lack standing to assert that claim given that they are not "consumers" as defined in HRS § 480-1. The court dismisses the unfair-competition claim—but with leave to amend—because the FAC lacks allegations concerning the required element of competitive harm.

**A.     Judgment on the Pleadings as to Count VI, the Elder-Abuse Claim**

Defendant contends that Plaintiffs' claim under Hawaii's elder-abuse statute, HRS § 28-94, should be dismissed because a claim under § 28-94 can be brought by only the Attorney General for the State of Hawaii, according to the

plain language of that statute. ECF No. 65-1 at PageID ## 755–56. The court agrees.

> HRS § 28-94(a) reads as follows:
>
> The attorney general may bring a civil action on behalf of the State, against any caregiver who commits abuse of a dependent elder, to prevent, restrain, or remedy such conduct. Any caregiver against whom a civil judgment is entered on a complaint alleging that the caregiver committed abuse against a dependent elder, shall be subject to a civil penalty of not less than $500 nor more than $1,000 for each day that the abuse occurred, and the costs of investigation.

Plaintiffs argue that, "while section 28-94 requires the Attorney General to bring suits on behalf of the State to combat elder abuse, elders and their representatives are not precluded from bringing suit on their own behalf." ECF No. 77 at PageID # 922. Public policy favors private enforcement of that statute, Plaintiffs argue, because the Hawaii Legislature was intent on "combat[ing] elder abuse" and because the "Attorney General is not [an] all-seeing [enforcer]." *Id.*

But the plain language of the § 28-94 controls: Subsection (a) expressly provides that "[t]he attorney general may bring a civil action on behalf of the State." Neither that subsection nor any other subsection provide private citizens similar authority. *Cf. Villon v. Marriott Hotel Servs., Inc.*, 130 Haw. 130, 142, 306 P.3d 175, 187 (2013) ("The plain language of Chapters 480 and 481B does not indicate that remedies therein are exclusive. The legislature knows how

8

to craft an exclusivity provision. . . . No such exclusivity provision appears in the relevant enforcement statutes in the consumer protection area." (citation omitted)); *Chung Mi Ahn v. Liberty Mut. Fire Ins. Co.*, 126 Haw. 1, 11, 265 P.3d 470, 480 (2011) ("Statutory analysis begins by examining the plain language of the statute at issue. . . . Where the language of the statute is plain and unambiguous, the court's only duty is to give effect to its plain and obvious meaning." (citation omitted)).[2] In short, the plain language of § 28-94 defeats Plaintiff's argument—The Attorney General, and only the Attorney General, can enforce that statute.

Plaintiffs next argue that, even if they cannot enforce the elder-abuse statute, their claim under that statute should still survive because they merely seek a declaratory judgment that Defendant violated the statute. ECF No. 77 at PageID # 922. "Assuming a declaratory judgment is granted . . . , Plaintiffs would then seek to involve the Attorney General to take such action as is deemed appropriate by the enforcing body." *Id.* Plaintiffs clarified at the January 18, 2022 hearing that they are seeking a declaratory judgment under Hawaii's declaratory-judgments statute, HRS § 632-1 (not 28 U.S.C. § 2201)

---

[2] Further, HRS § 28-94 is organized within Part IV of Chapter 28 of Title 4 of the Hawaii Revised Statutes—Part IV is titled "Medicaid Fraud Unit," and Chapter 28 is titled "Attorney General." Such organization suggests that the Hawaii Legislature intended the elder-abuse statute to be enforced by the Medicaid Fraud Unit in the Attorney General's office, a conclusion further supported by the Legislature's stated purpose for the Act creating the elder-abuse statute: "The purpose of [that] Act [was] to authorize the attorney general to seek civil penalties in dependent elder abuse cases." 2003 Haw. Sess. Laws Act 196, § 1 at 447.

9

There are two problems with Plaintiffs' argument. First, a party that lacks standing to assert a particular cause of action cannot use a declaratory-judgment action as a means to confer statutory standing. *See Org. of Police Officers v. City & Cnty. of Honolulu*, 149 Haw. 492, 505, 494 P.3d 1225, 1238 (2021) ("[Plaintiff] argues that HRS § 632-1, which provides for declaratory relief in certain circumstances, itself creates a right of action. It does not. An express or implied right of action must sound from some other law before a party may rely on HRS § 632-1's remedies. . . . [T]he declaratory judgment statute provides a remedy but does not furnish a cause of action; the substantive law the plaintiff seeks to enforce by way of a declaratory judgment must itself do so." (citation and footnote omitted)); *see also Societe de Conditionnement v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (stating that a declaratory-relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future"); *cf. Church of Scientology Int'l v. Kolts*, 846 F. Supp. 873, 882 (C.D. Cal. 1994) (holding that "without an underlying claim, Plaintiff has no right to a declaratory judgment pursuant to [the Federal Declaratory Judgments Act].").

And second, Plaintiffs' plan to obtain a declaratory judgment and "then seek to involve the Attorney General to take such action as is deemed appropriate," reveals that Plaintiffs lack standing under Article III of the United States Constitution to assert their elder-abuse claim. Even if Plaintiffs were to

succeed on the merits of that claim and were to obtain a judgment declaring that HMSA violated the elder-abuse statute, the Attorney General for the State of Hawaii would have discretion to rebuff Plaintiffs' request to enforce the judgment.[3] That possibility makes the court's judgment an advisory opinion. *See Smith v. Am. Asiatic Underwriters, Fed., Inc., U.S.A.*, 127 F.2d 754, 756 (9th Cir. 1942) (reversing lower court's judgment and holding that no declaratory judgment could be granted, because "the only controversy disclosed by the record was a controversy between appellee and the Secretary of Commerce," but that controversy was not amenable to a "decree of a conclusive character, . . . for the Secretary was not a party to the suit" and because even if the lower court's judgment was affirmed, "the Secretary, not being a party to the judgment, could disregard it and, by removing appellant [(a registrar who is subordinate to the Secretary)] and designating a new registrar, could render it wholly ineffectual" (internal quotation marks and footnote omitted)), *maintained on reh'g*, 134 F.2d 233 (9th Cir. 1943); *see also Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) ("For a

---

[3] The Attorney General "*may bring* a civil action on behalf of the State." HRS § 28-94(a) (emphasis added); *see also* HRS § 28-2.5(a) ("The attorney general shall investigate alleged violations of the law when directed to do so by the governor, or *when the attorney general determines* that an investigation would be in the public interest." (emphasis added)); *In re KAHEA*, 150 Haw. 43, 51, 497 P.3d 58, 66 (2021) (holding that, although the "Attorney General has a duty to 'represent the public interest in the protection of charitable assets,'" HRS § 28-5.2(a), "[t]he determination of whether an investigation is 'in the public interest' [under HRS § 28-2.5(a)] rests squarely with the Attorney General[,] [n]ot with [a private party,] [a]nd not with this court").

declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937))); *Altvater v. Freeman*, 319 U.S. 359, 363 (1943) ("The requirements of case or controversy are of course no less strict under the Declaratory Judgment Act, . . ., than in case of other suits." (citations omitted)).[4]

In sum, Plaintiffs lack statutory standing to assert the elder-abuse claim alleged in Count VI of the FAC. They cannot, therefore, maintain a declaratory-judgment action based on such a claim. The court also lacks subject matter jurisdiction over Plaintiffs' request for a declaratory judgment because they have not satisfied the requirements of Article III of the Constitution. Accordingly, HMSA's Motion for Partial Judgment on the Pleadings against Count VI of the FAC is GRANTED, and Plaintiffs' elder-abuse claim is DISMISSED with prejudice.

---

[4] Moreover, even if Plaintiffs' request could somehow be viewed as not calling for an advisory opinion, the court would exercise its "'unique and substantial discretion' to decline to issue a declaratory judgment." *Bank of Am., N.A. v. Cnty. of Maui*, 2020 WL 7700098, at *6 (D. Haw. Dec. 28, 2020) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

**B.     Judgment on the Pleadings as to Count VIII, the UDAP Claims**

*1.     Deceptive-Practices Claim—Standing as "Consumers"*

Plaintiffs must be "consumer[s]" to maintain their deceptive-practices claim under HRS § 480-2.  *See id.* § 480-2(d) ("No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section."); *see also Hough v. Pac. Ins. Co.*, 83 Haw. 457, 470, 927 P.2d 858, 871 (1996).  "'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  HRS § 480-1.  And, also under § 480-1, "'[p]urchase' or 'buy' includes contract to buy, lease, contract to lease, acquire a license, and contract to acquire a license."  (quotation marks omitted).

Plaintiffs argue they are consumers because they effectively "purchased" healthcare services from HMSA, despite not having paid any money to HMSA for those services.  *See* ECF No. 78 at PageID ## 933–34.  That is true, Plaintiffs claim, because each Plaintiff is entitled to a "constitutionally-protected property interest that comes in the form of Medicaid benefits," and because they "have the freedom to direct" that entitlement to "multiple MMCOs that contract with DHS," including to HMSA.  *Id.*  Thus, those Medicaid entitlements were

13

"'spent' by Plaintiffs—as consumers—in a manner of their choosing," and in this case were spent on HMSA. *Id.* at PageID # 934.

The court disagrees—Plaintiffs' argument is foreclosed by the plain language of § 480-1[5] and by a decision from the Supreme Court of Hawaii. The plain and ordinary interpretation of "purchase" is "to obtain for money or by paying a price." *Webster's New World College Dictionary* 1164 (4th ed. 2006). Section 480-1 equates "purchase" with "buy." "Buying" is traditionally defined as "get[ting] by paying or agreeing to pay money or some equivalent." *Id.* at 200. And Section 480-1 further specifies that "'[p]urchase' or 'buy' includes contract to buy, lease, contract to lease, acquire a license, and contract to acquire a license," all of which traditionally involve the payment of money or its equivalent. HRS § 480-1 (quotation marks omitted); *see also Dalesandro v. Longs Drug Stores Cal., Inc.*, 383 F. Supp. 2d 1244, 1249 (D. Haw. 2005) (analyzing the same statutory language) ("Pursuant to the doctrine of *noscitur a sociis*, 'a word is known by the company it keeps,' meaning that 'words are to be judged by their context and that words in a series are to be understood by neighboring words in the series.'" (quoting *United States v. King*, 244 F.3d 736, 740–741 (9th Cir. 2001))).

---

[5] "It is well settled that, when construing a statute, this court's 'foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.'" *Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 67, 905 P.2d 29, 42 (1995) (quoting *Crosby v. State Dep't. of Budget & Fin.*, 76 Haw. 332, 340, 876 P.2d 1300, 1308 (1994)).

The remaining question is whether Plaintiffs' directing their Medicaid entitlements to a specific provider is the functional equivalent under § 480-1 to paying money. It is not. Hawaii's Medicaid "PLAN" is not a program in which enrollees are given vouchers, credits, or tokens that are freely spendable at the provider of their choice and for the services of their choice. *Cf. United States v. Garcia*, 719 F.2d 99, 101 (5th Cir. 1983) (holding that the Voting Rights Act's "proscription against 'payment' for votes" did not exclude "'payment' in the form of a welfare food voucher," because the "food vouchers were issued in dollar amounts, and could be exchanged for the specified goods or services just as could an equal amount of cash"). Instead, the Medicaid "PLAN" is a program in which *DHS* contracts with and pays money to providers. The Medicaid enrollees are merely beneficiaries to that relationship—a relationship that is initially created by DHS's assigning a particular MMCO to each enrollee. An enrollee's ability to change that initial assignment after the fact does not transform Hawaii's Medicaid program into one in which enrollees are paying the equivalent of cash to MMCOs.

Plaintiffs' argument is also belied by caselaw. In *Hough v. Pacific Insurance Co.*, 83 Haw. 457, 927 P.2d 858 (1996), the Supreme Court of Hawaii flatly rejected the argument that an employee could have "purchased" workers-compensation coverage when he was merely a "third party beneficiary of the

15

contracts of insurance purchased by his employers."[6] 83 Haw. at 470, 927 P.2d at 871; *see also Hunt v. First Ins. Co. of Hawaii*, 82 Haw. 363, 372–73, 922 P.2d 976, 985–86 (Ct. App. 1996) (holding the same with respect to an injured customer's standing to sue a grocery store's general liability insurer). Plaintiffs contend *Hough* is inapposite because the plaintiff in that case "had no right to choose the workers' compensation insurer." ECF No. 78 at PageID # 934. But, like the employers' contracting autonomy in *Hough*, DHS has autonomy when initially assigning an enrollee a particular provider. The fact that Medicaid enrollees can later change those assignments is not so significant, for the purposes of Chapter 480's definition of "consumer," that it places this case outside of the purview of *Hough*. For those reasons, Plaintiffs cannot be deemed to have "purchased" services from HMSA.

Plaintiffs further argue that, even if they did not "purchase" healthcare services from HMSA, they were "solicited to purchase" healthcare services from HMSA by virtue of their "option to change MMCO's [sic]." *See* ECF No. 78 at PageID ## 932–34. But that argument is also foreclosed by the plain language of

---

[6] The plaintiff in *Hough* also argued that he was a "consumer" because he was stepping into the shoes of his employers, which had purchased contracts of insurance from the defendant. 83 Haw. at 470–71, 927 P.2d at 871–72. The Court rejected this third-party-beneficiary argument because neither of the plaintiff's employers were themselves "consumers" because they were not "natural person[s]." *Id.* (citing HRS § 480-1). Likewise, here, the State of Hawaii and its Department of Human Services are not natural persons.

16

§ 480-1. It is rather obvious that if someone is evidently incapable of purchasing something, that person could not be "solicited to purchase" that thing. As discussed above, Plaintiffs did not have the capability to purchase services from HMSA as enrollees in Hawaii's Medicaid program. Nor could they have had the apparent capability—from either Plaintiffs' or HMSA's perspective—to purchase healthcare services, according to the allegations in the FAC. *See* ECF No. 57 at PageID # 539, ¶ 160 ("[T]he State of Hawaii pays for medical assistance arranged and provided by HMSA and three other managed care plans."); *id.* at PageID # 536, ¶ 149 ("The Medicaid program is a [program] through which States provide essential health care services to needy individuals and families who cannot afford to pay for the services Medicaid makes available.").

Furthermore, Plaintiffs' argument is belied by *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 47 P.3d 1222 (2002). In *Zanakis-Pico*, the Supreme Court of Hawaii held that the "plain language of the [§ 480-1] reflects that the legislature intended not only to protect persons who actually purchased goods or services as a result of unfair or deceptive acts and practices, but also those who attempted or were *solicited to do so*." 98 Haw. at 316, 47 P.3d at 1229 (emphasis added). Along those lines, § 480-2 was intended to protect consumers from practices that "induce action that a consumer would not otherwise have undertaken." *See* 98 Haw. at 317, 47 P.3d at 1230. Here, because Plaintiffs were

incapable of purchasing or attempting to purchase healthcare services (given the structure and purpose of Hawaii's Medicaid program), Plaintiffs could not have been "solicited to do so." Further, it is simply incorrect to say that HMSA induced Plaintiffs to purchase services when they otherwise would not have purchased services—such a statement presupposes a capability to purchase.

In sum, the plain language of § 480-1 and relevant judicial precedents indicate that Plaintiffs are not "consumers," as a matter of law. Plaintiffs thus lack standing to bring their deceptive-practices claim in Count VIII of the FAC. Because giving Plaintiffs leave to amend that claim would be futile, HMSA's Motion for Partial Judgment on the Pleadings against the deceptive-practices claim in Count VIII of the FAC is GRANTED with prejudice.

  2. *__Unfair-Competition Claim—Allegations of Competitive Harm__*

To maintain an unfair-competition claim under HRS § 480-2, "the nature of the competition [must be] sufficiently alleged in the complaint." *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 435, 228 P.3d 303, 315 (2010) (quoting *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 111, 148 P.3d 1179, 1213 (2006)). The complaint must also contain allegations demonstrating that the alleged "injury results from a competition-reducing aspect of the defendant's behavior." *Id.* at 445, 228 P.3d at 325. Under those standards, "[i]t is not enough to allege harm to a competitor (e.g., that Defendants have gained a

18


competitive advantage over [other businesses by having lower prices]), Plaintiffs must allege a harm to competition," (e.g., that Defendants' lower prices are predatory). *Wadsworth v. KSL Grand Wailea Resort, Inc.*, 818 F. Supp. 2d 1240, 1267 (D. Haw. 2010).

In its Motion, HMSA contends that Plaintiffs have not stated an unfair-competition claim under § 480-2, because the FAC lacks allegations concerning competitive harm. ECF No. 66-1 at PageID ## 780–85. Plaintiffs do not address that contention in their Opposition. *See* ECF No. 78. The court agrees with HMSA—the FAC contains no allegations concerning competitive harm, and for that reason, Plaintiffs lack standing to assert their unfair-competition claim.[7]

Accordingly, HMSA's Motion for Partial Judgment on the Pleadings against the unfair-competition claim in Count VIII of the FAC is GRANTED. That claim is DISMISSED without prejudice, and Plaintiffs are given leave to amend Count VIII to the extent they are able to do so.

---

[7] HMSA also contends that Plaintiffs cannot maintain an unfair-competition claim because they have not alleged "what was 'unfair' about the unspecified competition in which HMSA was allegedly engaged." ECF No. 66-1 at PageID # 782. But the Supreme Court of Hawaii has held that "claims of unfair methods of competition [can be] based on conduct that would also support claims of unfair or deceptive acts or practices." *Hawaii Med. Ass'n*, 113 Haw. at 111, 148 P.3d at 1213. And the allegations of improper conduct in Count VIII could conceivably form the basis for both a deceptive-practices claim and an unfair-competition claim, assuming competitive harm is properly alleged. Specifically, there is an allegation that HMSA misled Plaintiffs by advertising a certain scope of HCBS coverage but then refusing Plaintiffs that scope of coverage. *See* ECF No. 57 at PageID # 559. There is also an allegation that HMSA improperly handled HCBS, *see id.*, possibly by providing Plaintiffs defective Korean translations of notices concerning their rights to those services, *see id.* at PageID # 516.

## V. <u>CONCLUSION</u>

For the foregoing reasons, HMSA's Motion for Partial Judgment on the Pleadings against Count VI is GRANTED.  The claims in Count VI are DISMISSED with prejudice.  And HMSA's Motion for Partial Judgment on the Pleadings against Count VIII is also GRANTED.  The deceptive-practices claim in Count VIII is DISMISSED with prejudice, but the unfair-competition claim is DISMISSED without prejudice.  Plaintiffs are given leave to amend the unfair-competition claim only, if they can do so, by February 21, 2022.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Park et al. v. Hawaii Med. Serv. Ass'n*, Civ. No. 21-00039 JMS-WRP, Order Granting Defendant's Motions for Judgment on the Pleadings Regarding Counts VI and VIII of the First Amended Complaint, ECF Nos. 65, 66