IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PARK, SOOK JA; PARK, SOON Y.; PARK, GRACE; and KIM, JAE SOOK, <br><br> Plaintiffs, <br><br> vs. <br><br> HAWAII MEDICAL SERVICE ASSOCIATION, <br><br> Defendant. | CIV. NO. 21-00039 JMS-WRP <br><br> ORDER (1) GRANTING DEFENDANT'S MOTION TO STRIKE, ECF NO. 107; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 68 |

**ORDER (1) GRANTING DEFENDANT'S MOTION TO STRIKE, ECF NO. 107; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 68**

## I. INTRODUCTION

Before the court are two motions from Defendant Hawaii Medical Services Association ("HMSA" or "Defendant"). The first is a Motion to Strike, ECF No. 107. In that Motion, HMSA requests that the court strike a report from Plaintiffs'[1] expert, Dr. Han-byul Chung, on the basis that Dr. Chung's report was submitted in a rebuttal posture—i.e., responsive to a report from HMSA's expert,

---

[1] The Plaintiffs are Sook Ja Park, Soon Y. Park, Grace Park, and Jae Sook Kim. ECF No. 57 at PageID # 503. The First Amended Complaint, ECF No. 57, was originally styled as a class action, but the parties stipulated to the dismissal of the class allegations on February 25, 2022. *See* ECF No. 120.

and past the deadline for opening reports—but contains opinions that go beyond merely rebutting the opinions provided by HMSA's expert.  *See* ECF No. 107-1. The Motion to Strike is GRANTED.  Dr. Chung's report is EXCLUDED, and Plaintiffs are precluded from using Dr. Chung as a witness in this case.

The second motion is a Motion for Summary Judgment, ECF No. 68, that seeks judgment against all counts in Plaintiffs' First Amended Complaint, ECF No. 57 ("FAC").  As the court explained in a prior order,[2] all of Plaintiffs' legal claims in the FAC are based on either or both of two allegations:  (1) HMSA improperly denied Plaintiffs medically necessary benefits and services to which they were entitled ("denial-of-benefits allegations"); and (2) HMSA provided deficient translations of plan documents to Plaintiffs and thus failed to effectively address Plaintiffs' cultural and language barriers ("deficient-translations allegations").  In its Motion for Summary Judgment, HMSA argues that both allegations require expert testimony to be proven at trial.  *See* ECF No. 68-1.  And because Plaintiffs failed to produce any expert testimony supporting those two allegations, the court should grant summary judgment against all claims in the FAC.  *See id.*  The court agrees as to the deficient-translations allegations— summary judgment is GRANTED against claims involving those allegations.  But

---

[2] *See* ECF No. 99 (available at *Park v. Hawaii Med. Serv. Ass'n*, 2022 WL 252426, at *1–2 (D. Haw. Jan. 27, 2022) (citing portions of the FAC)).

the court disagrees in part as to the denial-of-benefits allegations—summary judgment is GRANTED against claims involving those allegations with respect to Plaintiff Jae Sook Kim, but summary judgment is DENIED as to claims involving those allegations with respect to Plaintiffs Grace Park, Soon Y. Park, and Sook Ja Park.

## II.  <u>BACKGROUND</u>

### A.    **Factual Background**

This case concerns the State of Hawaii's Medicaid program.  *See* ECF No. 57.  "Medicaid is a joint state-federal funding program for medical assistance in which the Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume."  *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985).  Hawaii's Department of Human Services ("DHS") oversees the state's Medicaid plan, i.e., the "Plan for Medicaid, QUEST Integration" or simply the "PLAN."  ECF No. 102 at PageID # 1253, ¶¶ 15, 16.  DHS implements the PLAN by contracting with managed care organizations in order to provide medical services to PLAN enrollees.  *Id.*, ¶ 16.  HMSA is a managed care organization; Plaintiffs are PLAN enrollees and are beneficiaries to DHS's contracts with HMSA.  *See id.*, ¶¶ 15–20.  Plaintiffs were born in Korea, immigrated to the

United States, and have limited English proficiency.  *See* ECF No. 57 at PageID ## 541–42, ¶¶ 172–78.

HMSA is contractually obligated to cover "medically necessary" services for enrollees.  *See* ECF No. 102 at PageID # 1253, ¶ 16. [3]  That contractual obligation incorporates requirements from various regulations and statutes, including Hawaii Revised Statutes ("HRS") § 432E-1.4(a), which requires managed care organizations to cover health services recommended by an enrollee's treating physician and determined by the managed care organization's director or physician designee to be "medically necessary," as defined in HRS § 432E-1.4(b). *See* ECF No. 57 at PageID # 511, ¶ 29; *see also* ECF No. 102 at PageID # 1255, ¶ 32.  As one example of medical necessity, HMSA is obligated to provide certain "Long-Term Services and Supports ('LTSS')" and "Home and community-based services ('HCBS')" to enrollees that are at risk of deteriorating to the institutional level of care.  *See* ECF No. 102 at PageID # 1253, ¶ 16; ECF No. 57 at PageID # 515, ¶ 46.  HMSA completes the "at risk" determinations through quantitative health-and-functional assessments; enrollees scoring above a certain level are

---

[3] The citations in this paragraph and the subsequent two paragraphs are primarily to either the FAC, ECF No. 57, or Plaintiffs' Concise Statement of Facts, ECF No. 102.  Plaintiffs' Concise Statement of Facts, in turn, cites heavily to the FAC.  *See* ECF No. 102.  Although citing to an unverified complaint in opposition to a motion for summary judgment is clearly insufficient to demonstrate disputes of fact, the allegations described in this paragraph are not disputed by HMSA and merely provide context for HMSA's select challenges to Plaintiffs' prima facie case.

deemed at risk of requiring institutionalization.  *See* ECF No. 102 at PageID

## 1253–55, ¶¶ 16, 18, 29–32; ECF No. 62-2.  To illustrate, during the period from

January 27, 2020 through January 26, 2021, enrollees scoring five or more

functional points were deemed at risk of institutionalization.  ECF No. 57 at

PageID ## 547–48, ¶ 209 (referencing "Appendix K"[4]).  At other times, a score of

eleven was the threshold for the at-risk classification.  *See id.* at PageID # 528,

¶ 115.

Plaintiffs allege they were improperly denied medically necessary

LTSS and/or HCBS benefits when they were at risk of institutionalization.  *Id.* at

PageID ## 511, 535, 544.  Plaintiffs cast those denial-of-benefits allegations as

various legal claims:  In Count I of the FAC, Plaintiffs assert that their denial-of-

benefits allegations establish violations of the PLAN contract, Appendix K, and 42

C.F.R. § 438.208.  *See* ECF No. 57 at PageID ## 548–50.  In Count II, Plaintiffs

request a judgment declaring the meaning and scope of the PLAN's coverage of

HCBS, which will "assist [Plaintiffs] in seeking relief, including specific

performance and damages," to remedy the denial of their benefits.  *See id.* at

---

[4] Appendix K is an emergency amendment issued by DHS and approved by the Centers for Medicare and Medicaid Services during the declared national emergency for the COVID-19 pandemic.  *See COVID-19: Information for Waiver Providers*, State of Haw., Dep't of Health, https://health.hawaii.gov/ddd/covid-19/waiver-providers/ (last visited Mar. 9, 2022).  "Appendix K activates flexibilities available under the Medicaid 1915(c) authority," "allow[ing] [actions] such as providing services in different settings and in different ways such as telehealth."  *Id.*

PageID ## 550–52.  In Count V, Plaintiffs assert that their denial-of-benefits

allegations establish violations of the implied duty of good faith and fair dealing

under the PLAN contract.  *See id.* at PageID ## 555–57.  And Count VII asserts

that the denial-of-benefits allegations—and, more specifically, the denials'

disproportionate and adverse effects on the Korea-born Plaintiffs—establish

discrimination motivated by national origin, in violation of 42 U.S.C. § 18116.  *See*

ECF No. 57 at PageID ## 558–59.

HMSA is also contractually obligated to maintain a "cultural

competency" policy that effectively addresses cultural and language barriers to the

delivery of health services to enrollees.  ECF No. 102 at PageID # 1253, ¶ 17.

That contractual obligation potentially embodies requirements from various

statutes and regulations, including HRS § 432:1-101.5, HRS § 431:10-109, and 42

C.F.R. §§ 431.206, 431.210, 431.221, 431.242, 438.10, 438.71, and 438.404.  *See*

ECF No. 57 at PageID # 552, ¶¶ 232, 233.  Plaintiffs allege that when HMSA

furnished PLAN documents and notices to the Korean-speaking Plaintiffs, those

documents and notices were translated in a manner that was insufficient to provide

Plaintiffs proper notice regarding their rights and benefits, thus violating HMSA's

cultural-competency obligations.  ECF No. 102 at PageID # 1253, ¶ 22 (citing ECF

No. 57 at PageID # 509, ¶ 19).  For example, Plaintiffs allege that the translations

were deficient because they contained "hanja honyong" script—"a mixed script,

consisting of hangul, the Korean alphabet, and hanja, Chinese characters," which Plaintiffs found confusing.  ECF No. 57 at PageID ## 509, 516, 523.

Plaintiffs cast those deficient-translations allegations as various legal claims:  In Count III, Plaintiffs assert that their deficient-translations allegations establish violations of the PLAN contract, HRS § 432:1-101.5, HRS § 431:10-109, and 42 C.F.R. §§ 431.206, 438.10, 438.71, and 438.404.  *See* ECF No. 57 at PageID ## 552–53.  In Count IV, Plaintiffs assert that their deficient-translations allegations establish that HMSA withheld, misrepresented, and obfuscated essential information regarding Plaintiffs' rights to file grievances and appeals, amounting to a denial of due process under 42 U.S.C. § 1396a(a)(3).  *See* ECF No. 57 at PageID ## 553–55.  In Count V, Plaintiffs assert that their deficient-translations allegations establish violations of the implied duty of good faith and fair dealing under the PLAN contract.  *See id.* at PageID ## 555–57.  And in Count VII, Plaintiffs incorporate their deficient-translations allegations and assert that HMSA's methods for denying benefits disproportionately and adversely affected the Korean-speaking Plaintiffs, amounting to discrimination based on national origin, in violation of 42 U.S.C. § 18116.  *See* ECF No. 57 at PageID ## 558–59.

To summarize, Plaintiffs' denial-of-benefits allegations are pertinent to Counts I, II, V, and VII of the FAC.  Plaintiffs' deficient-translations allegations are pertinent to Counts III, IV, V, and VII of the FAC.

7

**B.      Procedural Background**

This case was originally filed in Hawaii state court but was removed

to this court on January 20, 2021.  *See* ECF No. 1.  Plaintiffs filed the FAC on

October 28, 2021.  ECF No. 57.  And on November 29, 2021, HMSA filed two

motions for judgment on the pleadings.  ECF Nos. 65, 66.  The court heard those

motions on January 18, 2022, *see* ECF No. 94, and issued an order on January 27,

2022 dismissing Count VI with prejudice and dismissing Count VIII with partial

leave to amend, ECF No. 99.  Plaintiffs' partial leave to amend Count VIII was

later extended until seven days after the issuance of this Order.  ECF No. 118.

HMSA also filed a third motion for judgment on the pleadings, ECF No. 59, which

was mooted by the parties' stipulating to dismissal of the class allegations in

the FAC.  *See* ECF No. 120.

HMSA filed the instant Motion for Summary Judgment on December

8, 2021.  ECF No. 68.[5]  Plaintiffs filed their Opposition to the Motion for

Summary Judgment on February 7, 2022.  ECF No. 101.  In support of their

Opposition, Plaintiffs filed a Concise Statement of Facts, ECF No. 102, which

---

[5] HMSA styled its Motion as a "Motion for Partial Summary Judgment [Against] Counts I Through VII, Count X, and All Claims for Which Expert Witness Testimony Is Required." ECF No. 68.  But because Counts VI, VIII, and IX (class certification) have since been dismissed, and because Count X merely confirms the specific relief requested by the preceding Counts, *see* ECF No. 57 at PageID ## 560–64, HMSA's Motion challenges all pending Counts in the FAC, making it a full Motion for Summary Judgment.

included as an attachment a "Written Opinion" from Dr. Han-byul Chung that addressed the previously submitted opinion of HMSA's expert witness, Mr. Steven C. Silver, *see* ECF No. 102-8.  HMSA had disclosed Mr. Silver's identity and his written report to Plaintiffs on January 7, 2022, the deadline for HMSA to disclose opening expert-witness materials under the court's scheduling order, ECF No. 15. *See* ECF No. 107-1 at PageID # 1311 (citing ECF No. 86 and ECF No. 107-4). Although Plaintiffs had identified Dr. Chung as an expert witness in their initial disclosures on March 8, 2021, ECF No. 20 at PageID # 214, they failed to provide a written report authored by Dr. Chung to HMSA before November 8, 2021, the deadline for Plaintiffs to disclose opening expert-witness materials under the court's scheduling order.  *See* ECF No. 117 at PageID # 1434.

On February 14, 2022, HMSA filed both its Reply in support of summary judgment, ECF No. 109, and the instant Motion to Strike Dr. Chung's report, ECF No. 107.  Because the Motion for Summary Judgment and the Motion to Strike are intertwined, the court held a status conference on February 16, 2022 and ordered that the briefing for the Motion to Strike be expedited so that the court could decide the Motions together.  *See* ECF No. 112.  Plaintiffs filed their Opposition to the Motion to Strike on February 22, 2022.  ECF No. 117.  And HMSA filed its Reply on February 25, 2022.  ECF No. 119.  The court held a hearing on both Motions on March 2, 2022.  ECF No. 122.

### III.  <u>STANDARDS OF REVIEW</u>

**A.      Motions to Strike Expert Reports**

Federal Rule of Civil Procedure 12(f) specifies that the district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  According to the express language of Rule 12(f), "only pleadings are subject to motions to strike."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also United States v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999) ("The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.").  "The proper vehicle for striking material outside of the pleadings is an evidentiary objection."  *Ellis v. Vial Fotheringham LLP*, 2019 WL 1553676, at *1 (D. Or. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1553671 (D. Or. Mar. 5, 2019).  Nevertheless, "[a] motion to strike matters that are not part of the pleadings may be regarded as an 'invitation' by the movant 'to consider whether [proffered material] may properly be relied upon,'" i.e., a motion in limine to exclude.  *Crisp*, 190 F.R.D. at 551 (quoting *Monroe v. Board of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975)).

District courts have "broad latitude to perform a 'gatekeeping' function in determining the admissibility of expert testimony."  *Harbut v. Monavie, Inc.*, 2017 WL 11628149, at *2 (C.D. Cal. July 10, 2017) (quoting and citing

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  One ground for excluding expert testimony is substantive—the testimony may be the product of unreliable principles and methods, or based on insufficient data and facts, in violation of the Federal Rules of Evidence.  *See id.*  Another ground is procedural—expert testimony may be excluded if it is submitted in an improper form or submitted belatedly under the Federal Rules of Civil Procedure or a court's scheduling order.  *See Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740–42 (9th Cir. 2021) (affirming exclusion of "improperly disclosed expert evidence under Federal Rule of Civil Procedure 37(c)(1)," where appellant had "violated Rule 26(a)(2)" by, *inter alia*, "fail[ing] to include an expert report for his retained expert witnesses"); *see also USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 2011 WL 1326008, at *2 (D. Nev. Apr. 6, 2011) ("[D]istrict courts follow a long standing practice of striking attachments to motions, such as affidavits, that do not comply with the Federal Rules of Civil Procedure or Evidence.").

## B.      Motions for Summary Judgment

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the

governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When determining

whether there are genuine issues of material fact for trial, the court must view "the

evidence and all reasonable inferences drawn therefrom in the light most favorable

to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir.

2011).  However, the nonmoving party cannot defeat summary judgment with

"unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs*

*Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003), nor by merely showing "some

metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party "bears the initial burden of informing the court of

the basis for its motion and of identifying those portions of the pleadings and

discovery responses that demonstrate the absence of a genuine issue of material

fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the

nonmoving party "fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the

burden of proof at trial," "there can be 'no genuine issue as to any material fact,'

since a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986).  Summary judgment must be issued against

the nonmoving party in such a situation.  *Id.* at 323; *see also Casumpang v. Int'l Longshore & Warehouse Union*, 361 F. Supp. 2d 1195, 1201 (D. Haw. 2005).  The nonmoving party can fail to establish an essential element of its claim by not providing expert testimony in support of a "particular conclusion [that] requires specialized knowledge." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (affirming summary judgment against plaintiffs' Federal Employees Liability Act claim, where "expert testimony [was] necessary to establish even that small quantum of causation required by [the Federal Employees Liability Act]," and plaintiffs failed to "proffer[] any admissible expert testimony" on causation).

## IV.  ANALYSIS

The court grants the Motion to Strike:  By submitting Dr. Chung's report as a rebuttal report but having that report address issues outside the scope of rebuttal, Plaintiffs failed to comply with the timing requirements for submitting expert materials pursuant to the Federal Rules of Civil Procedure and the court's scheduling order.  The sanction for violating those timing requirements is exclusion of the improperly submitted expert testimony.  Accordingly, Dr. Chung's testimony is excluded from this case.  As for HMSA's Motion for Summary Judgment, the court grants summary judgment against Plaintiffs' deficient-translations allegations because those allegations require expert testimony to be proven at trial and Plaintiffs have failed to provide expert testimony.  But as for

summary judgment against Plaintiffs' denial-of-benefits allegations, the court denies summary judgment as to three of the Plaintiffs and grants summary judgment as to the other Plaintiff:  Plaintiffs' treating physicians can provide percipient expert testimony based on prior medical evaluations, but only three Plaintiffs have submitted relevant evaluations that could form the basis for such testimony.

## A.   Motion to Strike (Exclude) the Report of Plaintiffs' Expert Witness

In its Motion to Strike, HMSA requests that the court "[p]reclud[e] Plaintiffs' use of Dr. Chung or his opinions as evidence on any motion, at any hearing, or at a trial."  ECF No. 107-1 at PageID # 1321.  Because HMSA requests exclusion of Dr. Chung's testimony, the court treats HMSA's Motion as a motion in limine to exclude.  *See Crisp*, 190 F.R.D. at 551; *Monroe*, 65 F.R.D. at 645.

### 1.   *Law Governing the Use of Expert Testimony*

Federal Rule of Civil Procedure 26(a)(2)(A) mandates that a party disclose the identity of any witness it may use at trial to present expert testimony. Disclosure of certain experts' testimonies involves submitting a report containing detailed information.[6]  Fed. R. Civ. P. 26(a)(2)(B).  Specifically:

---

[6] Expert witnesses that are "retained or specially employed" or "regularly employed" are subject to Rule 26(a)(2)(B)'s written-report requirement.  *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)). However, a witness that has expertise relating to particular circumstances and who will provide testimony regarding his/her first-hand perception of those circumstances, i.e., an expert

(continued . . . )

Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). Rule 26(a)(2)(D) requires a party to make the above disclosures "at the times and in the sequence that the court orders." "Timely and careful compliance with the requirements of Rule 26(a) is essential, both as a matter of fairness to litigants and as a matter of orderly procedure [particularly] during . . . events which occur in the final phases of discovery, motion work and

---

percipient witness, is not subject to the written-report requirement. *See id.* ("[A] treating physician is a percipient witness of the treatment he rendered—and therefore he is not subject to the written report requirement.").

trial preparation." *Suzuki v. Helicopter Consultants of Maui, Inc.*, 2016 WL 3753079, at *6 (D. Haw. July 8, 2016) (quoting *Garcia v. Qwest Corp.*, 2008 WL 4531657, at *2 (D. Ariz. Oct. 3, 2008)).

Federal Rule of Civil Procedure 37(c)(1) "gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1)'s sanctions are "automatic"; the only exceptions are when the noncompliant party can demonstrate that the violation of Rule 26(a) was either "substantially justified or harmless." *Merchant*, 993 F.3d at 740 (citing Fed. R. Civ. P. 37(c)(1)).

### 2. *Plaintiffs' Disclosures of Expert Materials*

The court's scheduling order required Plaintiffs to make their Rule 26(a) disclosures—that is, "the identity and written report of any person who may be used at trial to present expert evidence"—by November 8, 2021. ECF No. 15 at PageID ## 187–88. Plaintiffs identified Dr. Chung as an expert witness before that deadline. *See* ECF No. 20 at PageID # 214 (Plaintiffs identifying Dr. Chung in their initial disclosures on March 8, 2021). But Plaintiffs did not serve the required written report authored by Dr. Chung before that deadline. *See* ECF No. 117 at PageID # 1434. So, absent Plaintiffs' submitting a belated written report from Dr. Chung and that belated submission being "substantially justified" or "harmless,"

16

Fed. R. Civ. P. 37(c)(1), Plaintiffs cannot use Dr. Chung to provide expert testimony *in direct support* of their claims in this case.

Plaintiffs' use of expert testimony *in rebuttal* is governed by a different submission deadline, however. According to Rule 26(a)(2)(D)(ii) and the court's scheduling order, submission of the written report of any witness who may be called by Plaintiffs "solely to contradict or rebut" the evidence of an expert witness identified by HMSA need not occur before November 8, 2021 but must instead "occur within thirty (30) days after the disclosure by [HMSA]." ECF No. 15 at PageID # 188; *see also Dicillo v. GGP Meadows Mall, LLC*, 2021 WL 4750724, at *2 (D. Nev. Sept. 14, 2021) ("[R]ebuttal expert opinion is proper where it explains, repels, counteracts or disproves evidence of the adverse party." (citation and quotation marks omitted)). HMSA timely disclosed Mr. Silver's identity and his written report to Plaintiffs on January 7, 2022. *See* ECF No. 107-1 at PageID # 1311 (citing ECF Nos. 86, 107-4); ECF No. 15 at PageID ## 187–88 (specifying HMSA's deadline for disclosures under Rule 26(a)(2) as January 7, 2022). Plaintiffs thus needed to disclose their *rebuttal* expert-witness materials by February 7, 2022.

And indeed, on February 7, 2022, Plaintiffs served HMSA with a "Written Opinion" from Dr. Chung, ECF No. 102-8. *See* ECF No. 107-1 at PageID # 1312 (HMSA admitting that "[o]n February 7, 2022, Plaintiffs' counsel

served counsel for [HMSA] with a report from Dr. Han-byul Chung dated February 3, 2022"). Plaintiffs have since represented that Dr. Chung's written report was submitted as a "rebuttal report." ECF No. 117 at PageID # 1434.

But the problem is that the statements and opinions in Dr. Chung's rebuttal report do not attempt to "contradict or rebut" Mr. Silver's opinions. Mr. Silver's report explicitly states the "Scope of [His] Opinion": "to opine as to whether the above-enumerated documents are written exclusively in the Hangul alphabet or in Korean Mixed Script ('Hanja Honyong')." ECF No. 107-4 at PageID # 1339.[7] In the next few pages of Mr. Silver's report, he discusses the Korean language's writing system, how it was influenced by Chinese characters, and the differences between Chinese script ("hanja") and Korean script ("hangul"). Id. at PageID ## 1339–41. Mr. Silver then opines that "[i]t is impossible to confuse [the] two different forms of Korean," "one exclusively using Hangul letters and the other using a combination of Hangul letters and Hanja characters." Id. at PageID # 1341. Finally, Mr. Silver provides a "Conclusion" to his report: "[T]he above-enumerated documents furnished to me by [HMSA's counsel] for my review, and upon which I relied in forming my opinions and preparing this

---

[7] This opinion was apparently based, at least in part, on the FAC's allegation that HMSA's PLAN documents contained "Korean hanja honyong script translations," ECF No. 57 at PageID # 509, ¶ 18.

Report, are written entirely and exclusively in the Hangul alphabet and contain no text written in Korean Mixed Script (Hanja Honyong)." *Id.* at PageID # 1342.

Dr. Chung starts his "rebuttal report" by addressing "the document species referenced in Silver's opinion." ECF No. 102-8 at PageID # 1269. Specifically, in the first paragraph, Dr. Chung "agree[s]" that "[t]he documents listed do not contain hanja characters." *Id.* And in the second paragraph, Dr. Chung states that he "disagree[s] that the issue is whether the documents were translated using hanja or not. . . . The issue was the unnatural use of hanjaeo, [Chinese loanwords] in the translations. . . ." *Id.* And in the third paragraph, Dr. Chung states that in order to "understand what [the PLAN documents] said and meant" "[he] had to rely on the original documents in English" "because of ambiguous and misleading translation[s], partly due to the misuse of Chinese character-based words/Chinese loanwords." *Id.* None of these paragraphs contradicts or rebuts Mr. Silver's opinion, which concerns only whether the PLAN documents contain hanja honyong, and does not address, or even mention, Chinese loanwords, i.e., "hanjaeo." *See* ECF No. 107-4 at PageID ## 1337–42.

If there were any doubt as to whether Dr. Chung's opinions are out of bounds for a "rebuttal" report, Dr. Chung states the following in his conclusion:

> In my opinion the Plaintiffs could not have understood
> that the documents were notifying them of their rights for
> three reasons:

1. the translations excessively used Chinese character-based words and
2. the Chinese character-based words used were often words not used in natural Korean.
3. Translations were often ambiguous and misleading, even without Chinese character-based words, as they often omitted subject and object arguments necessary for unambiguous interpretations.

ECF No. 102-8 at PageID ## 1269–70.  Nowhere in Mr. Silver's report did he opine as to whether the PLAN documents adequately notified Plaintiffs of their rights and benefits.  *See* ECF No. 107-4 at PageID ## 1337–42.

Plaintiffs argue that Mr. Silver impliedly addressed the adequacy of the translations:  "Mr. Silver's opinion would be irrelevant if it was not offered to support the conclusion that HMSA's notices are comprehensible and culturally competent."  ECF No. 117 at PageID # 1436.  But Plaintiffs' argument is based on the false assumption that Mr. Silver's opinion (on behalf of HMSA) must address the adequacy of the translations of the PLAN documents.  HMSA has no burden to prove that its translations were adequate—the burden is on *Plaintiffs* to prove inadequacy.  As the defendant in this case, HMSA can pick and choose the issues on which it wants to mount a defense.  And as part of its defense, it can provide expert testimony on discrete issues, including whether the PLAN documents contain hanja honyong, while avoiding the broader issue of whether the translations are deficient as a whole.  By employing such a strategy, HMSA avoided "opening the door" for Dr. Chung to opine on the adequacy of the

translations in rebuttal, effectively confining the scope of Dr. Chung's rebuttal

opinion to whether the PLAN documents contain hanja honyong.  *Cf. Medlock v.*

*Taco Bell Corp.*, 2016 WL 439347, at *4 (E.D. Cal. Feb. 4, 2016) (excluding

plaintiffs' belated expert report, but noting that defendants may "'open the door' at

trial on cross-examination or through their own experts, [so that plaintiffs' expert]

may testify as to the contents of the [excluded] report").  In short, Dr. Chung's

report does not rebut Mr. Silver's report—instead, it is in direct support of

Plaintiffs' deficient-translations allegations.

          Because Dr. Chung's opinions support Plaintiffs' claims but do not

rebut Mr. Silver's opinions, they should have been disclosed "by a written report"

"at the time[] and in the sequence that the court orders," i.e., by Plaintiffs'

November 8, 2021 deadline.  Fed. R. Civ. P. 26(a)(2)(B)–(D).  Plaintiffs failed to

meet that deadline.  Rule 37(c)(1) requires exclusion of Dr. Chung's testimony

unless Plaintiffs' delay was "substantially justified" or "harmless."  Plaintiffs do

not attempt to (nor could they) argue that the delay was substantially justified.  *See*

ECF No. 117.  And HMSA would clearly be harmed by the admission of Dr.

Chung's improper testimony:  HMSA and its expert were forced to craft a defense

without the benefit of Dr. Chung's opinions, which were required to be disclosed

to HMSA before it crafted its defense, pursuant to the arrangement in the court's

scheduling order.  *See Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d

817, 827 (9th Cir. 2011) ("Nor has [plaintiff] shown that the delay was harmless. . . .  Because [plaintiff] had not yet disclosed any expert reports, [defendant] made its decisions regarding defense experts under the belief that [plaintiff's] non-medical experts would not be testifying in her case-in-chief. [Defendant's] experts developed their opinions and wrote their reports without knowing the scope of [Plaintiff's] experts' opinions.").  Moreover, if the court were to accept Dr. Chung's report in full and permit Mr. Silver to write a new report, HMSA would be harmed by the additional costs paid to Mr. Silver in crafting that report and the sunk costs from Mr. Silver's prior report.  *See Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 433–36 (8th Cir. 2019) (holding that the district court erred by not excluding plaintiffs' belated expert report where the "unfairness of [the belated submission] and imposition of additional costs [was] not harmless" to defendants).

Accordingly, HMSA's Motion to Strike is granted.  Dr. Chung's report is excluded,[8] and Plaintiffs are precluded from using Dr. Chung as a witness in this case.

---

[8] Although the first paragraph of Dr. Chung's report contains opinions that are within the scope of the issues addressed in Mr. Silver's report—specifically, whether the PLAN documents contain hanja honyong—Dr. Chung actually agrees with Mr. Silver in that first paragraph that the PLAN documents do not contain hanja honyong.  *See* ECF No. 102-8 at PageID # 1269. Although including an agreement or concession in a rebuttal report for context is not normally grounds for exclusion, when the entire rebuttal report amounts to an agreement or a concession, that report cannot be said to "contradict or rebut" a prior report.  Fed. R. Civ. P. 26(a)(2)(D)(ii);

(continued . . . )

**B.      Motion for Summary Judgment Against All Counts**

The premise of HMSA's Motion for Summary Judgment is simple:

Plaintiffs' claims require expert testimony to be capable of proof at trial, and

because Plaintiffs have failed to provide expert testimony in support of their

claims, summary judgment should be granted against those claims.  ECF No. 68-1

at PageID ## 795–96.  The court agrees as to the claims involving the deficient-

translations allegations.  But the court disagrees, in part, as to the claims involving

the denial-of-benefits allegations.

*1.      Summary Judgment Against the Deficient-Translations Allegations*

HMSA asserts that Plaintiffs must provide expert testimony to prove

their claims involving the deficient-translations allegations.  ECF No. 68-1 at

PageID # 811.  Despite differences in legal theories, those claims rest on the same

underlying issue: whether the documents and notices provided to Korean-speaking

Plaintiffs by HMSA were translated in a manner that was sufficient to provide

Plaintiffs proper notice regarding their rights and benefits under the PLAN.  And

although Plaintiffs may need to show different degrees of inadequacy to prove

each of their claims—for example, Plaintiffs' deprivation-of-due-process claim

---

see also *U.S. Bank, N.A. v. Glogowski L. Firm, PLLC*, 339 F.R.D. 579, 581 (W.D. Wash. 2021)
("[A] report must satisfy only two elements to qualify as a rebuttal report: it must address the
same subject matter as another party's expert report and must be intended solely to contradict or
rebut that report."  (citation and quotation marks omitted)).  Thus, Dr. Chung's entire report must
be excluded.

(Count IV) may require more language deficiencies than Plaintiffs' breach-of-contract claims (Count III)—those claims must be proven by the same means.  In short, the levels of proof may be different, but the means of proof are shared.

Given the shared means, the court must decide whether, as a matter of law, the means for proving the deficient-translations allegations require expert testimony.  Plaintiffs argue that they can "speak for themselves in stating that they cannot understand what is written on HMSA's Korean-translated documents." ECF No. 101 at PageID # 1238; *see also id.* at PageID # 1230 ("Plaintiffs themselves are the experts of what they do or do not understand.").  Plaintiffs suggest that the adequacy of HMSA's translations must be assessed against a subjective standard, i.e., whether the Plaintiffs in this case found the translations comprehensible.

The court disagrees—the adequacy of HMSA's translations must be assessed against an objective standard.  *See* ECF No. 69-6 at PageID ## 895–96 (PLAN document requiring HMSA to send notices to members in an alternative language, if necessary, and stating that "[a]ll written materials shall be worded such that the materials are understandable to a member who reads at the 6th (6.9 or below) grade reading level").  Plaintiffs cite no evidence or case law to the contrary.  And as HMSA persuasively argues, a subjective standard of adequacy would be nearly impossible to satisfy given the potentially infinite variability in

24

literacy levels and intellectual competencies of PLAN members. *See* ECF No. 109 at PageID # 1389; *see also In re Nat'l Prescription Opiate Litig.*, 2021 WL 4243084, at *5 (N.D. Ohio Sept. 17, 2021) (rejecting "[d]efendants' subjective approach to the pharmacist's corresponding responsibility" under federal regulations because "a standard that only looks at the prescribers' subjective state of mind could lead to absurd results"); *Gen. Motors Corp. v. Dohmann*, 722 A.2d 1205, 1214 (Conn. 1998) (rejecting "purely subjective standard" for an automobile lemon law because "[s]uch a standard inevitably would lead to absurd results by requiring manufacturers to replace vehicles that had only trivial defects").

At the March 2, 2022 hearing, Plaintiffs' counsel appeared to concede that at least when assessing the combination of the requirements for a cultural-competency policy and for providing translations comprehensible to those with 6th-grade reading skills, an objective standard should be applied. But counsel further suggested that Plaintiffs themselves could testify as to that objective standard by providing their education level and insight as to what they did and did not understand in the Korean translations.

The court rejects that argument. Contrary to Plaintiffs' suggestion, the adequacy of the Korean translations is an objective matter requiring testimony based on "specialized knowledge." Fed. R. Evid. 702(a); Hawaii Rule of Evidence 702. Plaintiffs' deficient-translations allegations hinge on alleged ambiguities and

eccentricities in Korean translations—issues that go beyond the basic comprehension of a language.  Although a court may not need specialized knowledge to translate a word or document into English from another language,[9] the same cannot be said of a jury attempting to determine whether English-to-Korean translations are adequate to native-Korean speakers.  Put differently, translating a document from Korean to the familiar language of English requires less specialized knowledge than assessing—from the shoes of a Korean speaker—whether an English-to-Korean translation is accurate and comprehensible.  In that respect, understanding Korean from a Korean speaker's perspective entails a degree of skill, knowledge, and expertise that is similar to that required from witnesses testifying as to scientific and technical matters that are traditionally reserved for the expert witnesses.  *See Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Haw. 277, 300, 172 P.3d 1021, 1044 (2007) ("Clearly, a jury of lay persons generally lacks the knowledge to determine the factual issues of medical causation, the degree of skill, knowledge, and experience required of the physician, and the breach of the medical standard of care.").[10]

---

[9] *See Hapai v. Brown*, 21 Haw. 499, 503 (1913) ("In rendering the language of this will into English the trial judge was at liberty to use his own knowledge of the Hawaiian language and also to call to his assistance the official interpreters of the court and, if it was deemed advisable, other experts.").

[10] The court is confident that under both Hawaii state law and federal law, proving the deficient-translations allegations requires specialized knowledge of the Korean language and

(continued . . . )

Because testimony regarding the adequacy of the Korean translations in the PLAN documents must be based on specialized knowledge, testimony from Plaintiffs themselves cannot carry their burden in proving the deficient-translations allegations. *See United States v. Preston*, 873 F.3d 829, 836 (9th Cir. 2017) ("While expert witnesses may testify in the form of opinion as to general matters based on specialized knowledge, Fed. R. Evid. 702, lay witnesses may not. Fed. R. Evid. 701."). And given that Dr. Chung's opinions have been excluded, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Casumpang*, 361 F. Supp. 2d at 1201. HMSA's Motion for Summary Judgment is granted as to the deficient-translations allegations in Counts III, IV, V, and VII of the FAC.

---

thus expert testimony. *See Barber v. Ohana Mil. Communities, LLC*, 2015 WL 4171984, at *6 (D. Haw. July 9, 2015) (looking to "Hawaii state substantive law to determine if expert testimony is required" for state law claims). A relevant precedent under Hawaii law is *McCandless v. Waiahole Water Co.*, 35 Haw. 314 (1940). *See id.* at 332 ("[R]eference to Hawaiian dictionaries would have been of little assistance to a person unversed in the Hawaiian language because the [operative] word . . . has a number of alternative meanings," and thus the trial judge "properly left the translations of the paragraph in dispute to proof by the parties through the medium of expert witnesses."). A relevant precedent under federal law is *Salem v. U.S. Lines Co.*, 370 U.S. 31 (1962). *See id.* at 35 (holding that expert testimony is "unnecessary" when "all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation").

### 2.   *Summary Judgment Against the Denial-of-Benefits Allegations*

HMSA asserts that Plaintiffs must provide expert testimony in order to prove their claims involving the denial-of-benefits allegations.  ECF No. 68-1 at PageID ## 818–19.  Those claims all rest on the same underlying issues: whether Plaintiffs were at risk of institutionalization and were improperly denied medically necessary services such as LTSS and HCBS.

The court must decide, as a matter of law, whether proving the denial-of-benefits allegations requires expert testimony.  The court finds that under both Hawaii state law and federal law, proving the denial-of-benefits allegations requires testimony based on specialized knowledge and, thus, from expert witnesses.  *See Barber*, 2015 WL 4171984, at *6 (looking to "Hawaii state substantive law to determine if expert testimony is required" for state law claims).

In that regard, both Hawaii and federal law require expert testimony to support medical malpractice claims.  *See id.* ("Hawaii courts have found that expert testimony is required in most medical malpractice cases."  (citing *Barbee v. Queen's Med. Ctr.*, 119 Haw. 136, 158, 194 P.3d 1098, 1120 (App. 2008))); *Murrey v. United States*, 73 F.3d 1448, 1456 (7th Cir. 1996) (holding that Illinois's requirement of expert testimony in medical malpractice cases applied to a medical malpractice claim under the Federal Tort Claims Act).  That requirement is noteworthy because there is a high degree of similarity between proving medical

malpractice and proving Plaintiffs' denial-of-benefits allegations. Specifically, proving both requires evaluating objective standards for medical professionals. *See Exotics*, 116 Haw. at 299–300, 172 P.3d at 1043–44 ("[I]n the medical negligence case, lay jurors are ill prepared to evaluate complicated technical data for the purpose of determining whether professional conduct conformed to a reasonable standard of care . . . ." (quoting *Bernard v. Char*, 79 Haw. 371, 377, 903 P.2d 676, 682 (App. 1995))).

For Plaintiffs' denial-of-benefits allegations, a "medically necessary" service is defined in HRS § 432E-1.4(b) as a "health intervention" that is "[f]or the purpose of treating a medical condition"; "[t]he most appropriate delivery or level of service, considering potential benefits and harms to the patient"; "[k]nown to be effective in improving health outcomes"; and "[c]ost-effective for the medical condition being treated compared to alternative health interventions." *Id.* § 432E-1.4(b)(1)–(4). Those four elements determine medical necessity, as evaluated by a "treating licensed health care provider and the health plan's medical director or physician designee." *Id.* § 432E-1.4(c). And in the specific example of LTSS and HCBS benefits, those benefits are conditioned on an at-risk determination that is conducted by a nurse and a social worker. *See* ECF No. 59-3 at PageID ## 613–14, 616; ECF No. 62-2; ECF No. 102 at PageID # 1253, ¶ 16.

Consequently, in order to prove they were due "medically necessary" services and/or were "at risk" of institutionalization based on a health-and-functional assessment, Plaintiffs must provide testimony from the perspective of an objective, reasonable medical professional, e.g., a physician or nurse.  An expert is clearly required—under both Hawaii law and federal law—to provide such testimony.  *See Devine v. Queen's Med. Ctr.*, 59 Haw. 50, 51–52, 574 P.2d 1352, 1353 (1978) (per curiam) ("No expert medical testimony was offered by the plaintiff to support her claim. . . .  [T]he record fails to reveal that the post-operative care and conduct of the defendants towards the plaintiff's decedent was a proximate or contributory cause of his death from pulmonary embolism. . . . Expert medical testimony, under the circumstances, was required to establish this essential element of the plaintiff's case."  (citations omitted)); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

Plaintiffs have not disclosed any testimony from retained experts under Rule 26(a)(2) to support their denial-of-benefits allegations.  Plaintiffs argue, however, that they "may still name [as expert witnesses] the treating physicians who evaluated Plaintiffs and created the 1147 Forms,"[11] and that those expert

---

[11] "1147 Forms" are "Level of Care and At Risk Evaluation" forms that can be used by physicians to assess whether a patient is at risk of institutionalization.  *See* ECF No. 101 at PageID # 1235.  Plaintiffs provide copies of two 1147 Forms, ECF Nos. 114 and 114-1, and also a copy of a medical-history notes that summarize a 1147 Form, ECF No. 114-2.

witnesses can opine as to the medical necessity of denied benefits and/or Plaintiffs being at-risk.  *See* ECF No. 101 at PageID ## 1243–44.  The court agrees. According to the plain language of Rule 26(a)(2)(A), that Rule's identification requirement applies to all witnesses providing expert testimony, including percipient witnesses such as treating physicians and others with direct knowledge of the facts of the case.  But "[t]o the extent an expert's testimony is based on her own diagnosis and treatment, that witness is not 'retained or specially employed' or 'regularly employed' to provide opinion testimony and therefore is not subject to Rule 26(a)(2)(B)'s report requirement."  *Durham v. Cnty. of Maui*, 2011 WL 2532690, at *3 (D. Haw. June 23, 2011) (citing *Goodman*, 644 F.3d at 826 ("[W]e join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.")).

Applying that principle, the treating physicians who evaluated Plaintiffs are expert witnesses that are not subject to the written-report requirement in Rule 26(a)(2)(B).  But because Plaintiffs did not disclose those treating physicians as experts, *see* ECF No. 101 at PageID # 1244, Plaintiffs have violated Rule 26(a)(2)(A).  That is, by intending to use non-retained percipient expert witnesses, Plaintiffs were required—but failed—to disclose the names of those

experts under Rule 26(a)(2)(A).  That violation implicates Rule 37(c)(1)'s sanction of exclusion.  *See Durham*, 2011 WL 2532690, at *3–4.

The court finds, however, that the "harmless" exception in Rule 37(c)(1) applies in this situation.  HMSA has been on notice since Plaintiffs' filing of the FAC that Plaintiffs may use prior evaluations from treating physicians to prove their denial-of-benefits allegations.  *See* ECF No. 57 at PageID # 521, ¶ 71; *id.* at PageID # 528, ¶ 115; *id.* at PageID # 546, ¶ 203.  And although not disclosed as experts, the treating physicians were named as witnesses in Plaintiffs' initial disclosures.  *Compare* ECF No. 20 (listing various physicians), *with* ECF Nos. 114, 114-1, and 114-2 (sealed medical evaluations authored by the treating physicians).  Those facts make Plaintiffs' delayed identification harmless to HMSA.  *See Durham*, 2011 WL 2532690, at *5 ("Plaintiffs will not be prejudiced if [the treating physician that was not properly disclosed] is permitted to testify at trial.  Plaintiffs have known and prepared for quite some time that [the treating physician] would be a witness at trial . . . .").

Turning back to the Motion for Summary Judgment, the scope of HMSA's Motion is confined to the absence of expert testimony—HMSA does not make arguments as to the sufficiency of Plaintiffs' treating-physician evidence. *See* ECF No. 68-1.  Considering the limited scope of the Motion, and that three of the Plaintiffs can provide expert testimony through their treating physicians, the

court denies summary judgment against those three plaintiffs with respect to their denial-of-benefits allegations.  Specifically, summary judgment is denied as to Plaintiff Grace Park, Plaintiff Soon Y. Park, and Plaintiff Sook Ja Park.  *See* ECF Nos. 114, 114-1, 114-2 (sealed copies of treating physicians' medical evaluations of those three plaintiffs, respectively).[12]

But Plaintiff Jae Sook Kim has not submitted any evidence in opposition indicating that an expert witness could support her denial-of-benefits claims through testimony based on a health-and-functional assessment, or based any other type of medical evaluation for that matter.  In fact, Plaintiff Kim is the only Plaintiff that did not submit a declaration in opposition, and she is conspicuously absent from Plaintiffs' Concise Statement of Facts, ECF No. 102. Rather, Plaintiffs' Opposition points to allegations in the FAC—that Kim was previously awarded adult day care services by HMSA and another managed care provider, *see* ECF No. 57 at PageID ## 530–33—and attempts to extrapolate from those alleged prior awards the conclusion that adult day care services remained

---

[12] The court rejects HMSA's argument that Plaintiffs' attached medical evaluations, ECF Nos. 114, 114-1, and 114-2, cannot be considered because they have not been properly authenticated.  ECF No. 109 at PageID ## 1387–88.  "At the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form.  [Courts] instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.").

medically necessary for Kim in the future.  *See* ECF No. 101 at PageID ## 1245–46.  Apparently based on the FAC's allegations, Plaintiffs' counsel argued at the March 2, 2022 hearing that expert testimony is not required, because Plaintiff Kim can testify as to the prior awards, her advanced age, and her health conditions as of the time she was denied adult-day-care benefits.

The court rejects this argument because a nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Spacelabs*, 343 F.3d at 1112 (citing *Liberty Lobby*, 477 U.S. at 249–52).  Plaintiff has submitted no evidence at summary judgment to support the existence of the alleged prior awards, her age, or her medical conditions at the time she was denied adult-day-care benefits.  She did not provide a declaration as to those assertions, and the court cannot base a denial of summary judgment merely on attorney argument suggesting that a plaintiff can testify in support of certain assertions.  *See First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968) ("[W]hen a motion for summary judgment is made and supported[,] an adverse party may not rest upon the mere allegations or denials of his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial."  (ellipses, quotation marks, and citation omitted)); *Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").  Because of the lack of expert opinion, and the lack of any other evidence that Kim's denial of benefits was wrongful, summary judgment must be granted against Plaintiff Jae Sook Kim with respect to her denial-of-benefits allegations.

Finally, as the court explained in the March 2, 2022 hearing, HMSA has not been afforded an opportunity to attack the sufficiency of Plaintiffs Grace Park, Soon Y. Park, and Sook Ja Park's evidence—including their medical evaluations conducted by treating physicians—at the summary judgment stage. HMSA was denied that opportunity because Plaintiffs failed to name the treating physicians as expert witnesses and to serve the medical evaluations before HMSA filed its Motion.  If HMSA determines that it wants to file a different motion for summary judgment attacking the sufficiency of Plaintiffs' evidence, HMSA is given leave to do so by filing a motion no later than April 8, 2022.[13]

In sum, as to Plaintiff Jae Sook Kim, the Motion for Summary Judgment is granted against the denial-of-benefits allegations in Counts III, IV, V, and VII of the FAC.  No claims remain as to Plaintiff Jae Sook Kim.  But as to

---

[13] Should there be a need to alter this deadline, a status conference should be set before United States Magistrate Judge Wes Porter.

Plaintiffs Grace Park, Soon Y. Park, and Sook Ja Park, the Motion for Summary

Judgment is denied against the denial-of-benefits allegations in those Counts.

## V. <u>CONCLUSION</u>

For the foregoing reasons, HMSA's Motion to Strike, ECF No. 107, is

GRANTED.  Dr. Chung's report is EXCLUDED, and Plaintiffs may not use Dr.

Chung as a witness in this case.  HMSA's Motion for Summary Judgment, ECF

No. 68, is GRANTED with respect to the deficient-translations allegations in

Counts III, IV, V, and VII of the FAC.  And as to Plaintiff Jae Sook Kim, HMSA's

Motion for Summary Judgment is GRANTED against Plaintiff Kim's denial-of-

benefits allegations in Counts III, IV, V, and VII.  But as to Plaintiffs Grace Park,

Soon Y. Park, and Sook Ja Park, the Motion for Summary Judgment is DENIED

with respect to the denial-of-benefits allegations in Counts III, IV, V, and VII.

HMSA is given leave to file an additional motion for summary judgment by April

8, 2022, if it chooses to do so.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 9, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Park et al. v. Hawaii Med. Serv. Ass'n*, Civ. No. 21-00039 JMS-WRP, Order (1) Granting
Defendant's Motion to Strike, ECF No. 107; and (2) Granting in Part and Denying in Part
Defendant's Motion for Summary Judgment, ECF No. 68